JUL 6 2021 PM1:19
FILED - USDC - BPT - CT

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

## PRO SE PRISONER CIVIL RIGHTS COMPLAINT

CASE NO. 3:21cv919 VAB

**PLAINTIFF(S)** [Write the name(s) of the person(s) complaining. Do not use **et al.**]

Cody R. Urban

vs.

**DEFENDANT(S)** [Write the name(s) of the person(s) you are suing.  If you do not know a name, write "John Doe" or "Jane Doe."  Include the defendant's rank or title if you know it. Do not use **et al.**]

Angel Quiros

David Maiga

Elizabeth Tugie

Gavin Galligan

Complete every section and **SIGN THE LAST PAGE.**

*Revised 12/13/18*

## A. JURISDICTION

Because federal courts cannot hear every kind of claim, you must identify the law that says this court can hear your claim. There are two possibilities. Check one.

I can bring my complaint in federal court because I am suing:

1. _____X_____ State, county or city employees for violating my federal rights under 42 U.S.C. Sec. 1983/1985/1986; OR

2. _____ Federal employees for violating my federal rights under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and 28 U.S.C. Sec. 1331.

## B. PLAINTIFF (THE PERSON FILING THIS COMPLAINT)

If there is more than one plaintiff, attach additional pages. Provide items a, b, and c for each plaintiff.

1. First Plaintiff
   a. Full Name: Cody Richard Urban

   b. Inmate Number: 399827

   c. Correctional facility: Brooklyn Correctional Inst

## C. DEFENDANT (THE PERSON WHOSE ACTIONS YOU ARE COMPLAINING ABOUT)

If you are suing more than six defendants, attach additional pages. Provide items a, b, and c for each defendant.

1. First Defendant
   a. Full Name: Angel Quiros

   b. Rank or Title: Commissioner of Correction

   c. Workplace: 24 Wolcott Hill Rd
      Wethersfield, CT 06109

*Revised 12/13/18*

**2**

2. Second Defendant
   a.   Full Name: David Maiga

   b.   Rank or Title: Director of Classification

   c.   Workplace: 1151 East St South
                    Suffield, CT 06078

3. Third Defendant
   a.   Full Name: Elizabeth Tugie

   b.   Rank or Title: Counselor Supervisor of Classfication

   c.   Workplace: 1151 East St South
                    Suffield, CT 06078

4. Fourth Defendant
   a.   Full Name: Gavin Galligan

   b.   Rank or Title: Director of Community Release

   c.   Workplace: 3 Walker Dr
                    Enfield, CT 06082

5. Fifth Defendant
   a.   Full Name:

   b.   Rank or Title:

   c.   Workplace:

6. Sixth Defendant
   a.   Full Name:

   b.   Rank or Title:

   c.   Workplace:

## D. REASON FOR COMPLAINT

**WARNING:  Contact Inmate Legal Aid Program.  Common mistakes can get your case dismissed as frivolous or for failure to state a good legal claim.** If this happens, you will still have to pay the filing fee, even if you are proceeding in forma pauperis.  To avoid losing your filing fee, please read this information carefully and consult Inmate Legal Aid Program before you file.

*Revised 12/13/18*

1. Failure to use the prison grievance process before suing.  If you have not followed all the steps in the grievance process before you come to court, the defendants may ask the Court to dismiss your claims for "failure to exhaust administrative remedies."

2. Complaining about incidents that happened a long time ago:  If you are suing about events that happened more than three years ago, the defendants may ask the Court to dismiss your case under the "statute of limitations."

3. Suing people who were not personally involved:  You can generally only sue defendants who were directly involved in harming you.  In order to sue a supervisor, you must usually show that the supervisor knew about the actions of other defendants and failed to stop them.

4. Suing defendants who have immunity to suit for money damages:  You generally cannot sue the following people and entities for money damages:  the State of Connecticut; agencies of the state (like the Department of Correction); the United States government; the President of the United States (for actions taken while President); judges (for actions taken in connection with judicial duties); parole board officers (for actions taken in imposing parole conditions or revoking parole); prosecutors (for actions taken in performing duties integral to the criminal judicial process).  If you think you have a claim for money damages against such people or entities, check with Inmate Legal Aid Program first.  If you name defendants who are immune to suit from money damages and your suit is dismissed on that basis, you will lose your filing fee.

5. Complaining about a criminal conviction or prison disciplinary proceeding that resulted in loss of good time credits or other change to your time in prison.  If winning your claims "would necessarily imply the invalidity" of a criminal conviction or prison disciplinary punishment affecting the time served, then you cannot make these claims under Section 1983 unless you have already had the conviction or prison disciplinary proceeding invalidated, for example through a habeas proceeding.  See *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

Please note that this is not a complete list of the problems you might encounter with your case.  The Court cannot give you legal advice and will not appoint a lawyer for you until it is clear that you have a good legal claim.  Until then, your best strategy is to call the Inmate Legal Aid Program before you file a complaint.  If Inmate Legal Aid Program says you do not have a good case, you should consider that advice very seriously.

Now you need to explain how your federal rights were violated (remember that not every violation of state law or prison regulations amounts to a violation of federal law).  What you need to tell the Court is who did what, when they did it, and how you were harmed.

*Revised 12/13/18*

You do not need to cite to the Constitution, any statutes, or any cases. However, it is important to be specific about dates, times, and the names of the people involved. It is helpful to put each important fact in a separate, numbered paragraph.

If you do not know the name of the person who harmed you, call that person Defendant Doe and provide some information from which it will be possible to identify the person - for example, gender, rank and shift. If there is more than one defendant whose name you do not know, call them Defendant Doe1, Defendant Doe2, and so on.

Here is an example of the proper way to describe your claims:

Example of Statement of Case
1. On April 12, 2015, I fell and injured my foot during a basketball game with other prisoners.
2. After the game, I asked Defendant CO Brian Smith to let me see the nurse. Defendant CO Brian Smith told me that I could not see the nurse because it was not an emergency.
3. During the afternoon, my foot became swollen and very painful.
4. At about 5 p.m., in the presence of my cellmate Bill Bloggs, I told Defendant Lieutenant Jane Doe, who was the shift supervisor, that I needed a doctor and showed her my swollen foot.
5. Defendant Lieutenant Jane Doe brought me two Tylenol and told me that I could not see the nurse until sick call the next morning.
6. The next day, I could not get out of bed because my foot was so swollen and painful. I had to go to hospital and have an operation to fix my foot.
7. I had to take pain medication for two months after the operation and have needed a walking stick for support since that time.
Now describe your claims.

Statement of Case
1.


2.                              (SEE ATTACHED)


3.


4.

*Revised 12/13/18*

**5**

5.

(SEE ATTACHED)

6.

7.

8.

9.

10.

If you need more space, attach additional pages, but be as brief as possible.

**E.    REQUEST FOR RELIEF**

Tell the court what kind of relief you want.  **Remember**: (1) You can only get money damages for mental or emotional injury if you were also physically injured; (2) Money damages may be reduced to pay restitution to victims of your crime and fees for a courtappointed attorney, if you had one; (3) You cannot use a Section 1983 or *Bivens* action to request release from custody, a reduction in your sentence, or a restoration of good time credits.  For any of these, you must request a Writ of Habeas Corpus.

*Revised 12/13/18*

F.      DO YOU WISH TO HAVE A JURY TRIAL?  YES __X__ NO_____

G.      DECLARATION UNDER PENALTY OF PERJURY

Warning: You must sign this or your complaint will not be filed.

By signing this complaint, I certify under penalty of perjury that the information contained in this complaint is true and accurate to the best of my knowledge.  I understand that if I lie in this complaint, I may be prosecuted for perjury, and punished with as much as five (5) years in prison and/or a fine of $250,000.  See 18 U.S.C. Sections 1621, 3571.

Signature: _____

Signed at _Brooklyn Corr Inst_ on _June 16, 2021_
                    (Location)                          (Date)

If there are additional plaintiffs, attach another page with the name and signature of each plaintiff on it.  **The complaint cannot be filed without a signature from each plaintiff.**

H.      FINAL INSTRUCTIONS

WARNING: Your complaint will not be filed unless you complete each of these steps:

        1.      Answer all questions on the complaint form.

        2.      Sign the Declaration under Penalty of Perjury on p. 7

Remember, the Clerk cannot file your complaint unless you take all of the steps above.

*Revised 12/13/18*

## INTRODUCTION

This is a civil rights action filed by Cody R. Urban #399827 a state prisoner of the Connecticut Department of Corrections, for money damages, declaratory judgment, and injunctive relief under 42 U.S.C. section 1983, alleging the deprivation of a liberty interest for wrongfully classifying and falsely labeling the plaintiff as a sexual offender without due process of law in violation of the Fourteenth Amendment to the United States Constitution, and also alleges a violation of the Fifth Amendment to the United States Constitution. The plaintiff further alleges by classifying him as a sexual offender has punished the plaintiff without clear warrant of law in violation of Article First section 9 of the Constitution of Connecticut. At this time the plaintiff lists several department of corrections employees as defendants in this suit, and all said defendants are sued in there Individual, and Official Capacities.

## JURISDICTION

The court has jurisdiction over the plaintiffs claims of violation of federal constitutional rights under 28 U.S.C. sections 1331, and 1343.

The court has supplemental jurisdiction over the plaintiffs claims of state constitutional rights under 28 U.S.C. section 1367.

## I. FACTS

1. As a result of a incident occuring on Oct 3, 2013 into Oct 4, 2013 the plaintiff was charged with an array of offense's which consisted of Assault in the second degree which included a lesser included offense of Assault in the third degree, Assault in the second degree by means of a dangerous instrument, Burglary in the first degree, Home Invasion which included a lesser included offense of Burglary in the third degree, Sexual Assault in the first degree, Threatening in the first degree which included a lesser included offense of Threatening in the second degree, and Carrying a Pistol Without a Permit. (exhibit: O)

2. The plaintiff denied any sexual content to the incident, and went to trial.

3. On Feb 8, 2016 the plaintiff was found NOT GUILTY of Assault in the second degree, Assault in the second degree by means of a dangerous instrument, Home Invasion, Sexual Assault in the first degree, Threatening in the first degree, and Carrying a Pistol Without a Permit.

4. The plaintiff was found GUILTY of Assault in the third degree, Burglary in the first degree, Threatening in the second degree, and Burglary in the third degree.

5. The Burglary in the third degree conviction was vacated by the trial judge.

6. On March 31, 2016 the plaintiff was sentenced to 15 years execution suspended after 7 years in prison with 5 years probation for the Burglary in the first degree conviction, and one year on the Threatening in the second degree conviction along with one year on the Assault in the third degree conviction to run concurrently to the sentence on the Burglary in the first degree conviction, which he is presently serving.

## II. POLICY

7. When inmate's enter the Connecticut Department of Correction's (DOC) they receive a full initial classification within fourteen days of admission which determine's 7 risk score's and 7 need's score's.

8. An inmate's 7 need's score's determine treatment/programs, and consist of medical and health care, mental health care, education, vocational training and work skills, substance abuse treatment, sex offender treatment, and community resources. Administrative Directive (AD) 9.2 8(b) (id. at P)

9. The 7 risk score's consist of history of escape, severity/violence of the current offense, history of violence, length of sentence, presense of pending charges/bond amount and/or detainer's, discipline history, and security risk group membership. AD 9.2 8(a) (id. at P)

10. The overall risk score indicate's an inmate's "external and internal physical and structural security as provided by the departments facilities". Pg 6 Objective Classification Manuel (OCM) (rev4/12)

11. Each risk and need score is rated on a scale of one being the lowest and five being the highest.

12. "An overall risk score is determined by the highest rating assigned to any of the seven(7) factors outlined in section 8(a) of this directive, with the exception of the sex offender treatment need score in section 8(b) of this directive. No inmate with a sex offender treatment need score of a 2 or greater shall be assigned an overall score below level 3 without authorization from commissioner or designee" AD 9.2 8(c) (id. at P)

13. Thomas v. Warden 891 A.2d 1016 (Conn. Super.Ct.2005) " for the vast majority of inmates... a level S-3 has all the [effect] of a level 3 risk score"

14. Officially characterizing the sex offender treatment score as a need's score even though it is essentially a risk score is the DOC's attempt to eliminate constitutional protection's pertaining to inmate's with a sex offender treatment need score (SOTNS).

### III. INSUFFICIENT DUE PROCESS PROCEDURES

15. After the plaintiff's initial arrest he entered the DOC on Oct 18, 2013, and received a full initial classification which determined his SOTNS of a S-3U (U=unverified) on Oct 22, 2013.

16. The plaintiff had no knowledge of the existance of a SOTNS nor was he notified that an initial classification took place or that he was assigned a SOTNS, and although at times an inmate is provided with C-7 form which shows risk and need's score's, but the SOTNS is excluded from that form so an inmate has no idea he has been assigned a SOTNS.(exhibit: D)

17. On June 11, 2021 through freedom of information the plaintiff obtained an internal DOC classification log dated Oct 22, 2013 which list's the plaintiff as a Sexual Offender with a score of a 3, and a subcode of a U.(id. E)

18. The plaintiff made bond on Dec 24, 2013, and remained at liberty until the jury renderd their verdict on Feb 8, 2016 at which point he again entered the DOC, and unbeknown to him was again assigned a SOTNS of a S-3U on Feb 9, 2016.(id. F)

19. Also on June 11, 2021 through freedom of information the plaintiff obtained an internal classification log dated Feb 9, 2016 which list's the plaintiff as a Sexual Offender with a score of a 3, and a subcode of a U.(id. G)

20. April 7, 2016 the plaintiff arrived to Walker Correctional Institution, where correctional counselor Moss handled the plaintiff's classification assessment which is the first time he was told he is classified as a sexual offender by the DOC.

21. The plaintiff attempted to inform CC Moss that he was found NOT GUILTY of a sexual assault during his trial, which was disregarded resulting in no change to his classification.

22. CC Moss showed the plaintiff his rap sheet which showed a false charge he never had during his trial along with multiple drop down error's which the plaintiff made aware to her at that time.

23. DOC classification policy state's "Any consideration for a sexual treatment need score based on non-conviction information including but not limited to: an original sexual offense charge substituted to a non-sexual offense charge/conviction; information discoverd in a pre-sentence investigation (psi) or police report which is part of a crime resulting in a conviction that was sexual in nature". Pg 36 OCM(rev4/12) (id. A)

24. The plaintiff did not have any substituted charge in regards to the sexual assault charge he was found not guilty of, and the plaintiff's conviction's of Burglary, Threatening, and Assault are in no way sexual in nature.

25. DOC classification policy state's "a hearing pursuant to the procedures set forth for sex treatment needs score's based on non-conviction information prior to the assignment of the sex treatment need score". Pg 36 OCM

26. The DOC's attempt at a hearing regarding the plaintiff's SOTNS was meaningless due to the "predisposed" decision by the DOC in assigning the plaintiff a SOTNS of a 3 along with a Sexual Offender label prior to the hearing in April 2016.(id. A)

27. As previously stated the DOC already determined the plaintiff's SOTNS of a 3 upon admission into the DOC unbeknown to him during his initial classification on Oct 22, 2013, and Feb 9, 2016 which was based on non-conviction information because the plaintiff was never convicted of a sexual offense.

28. The only change resulting from the hearing was the subcode U (unverified) changed to a VN (verified,non-conviction) but no matter what the subcode is the predetermined sexual offender score of a 3 define's the plaintiff as having a "known history of sexual offenses involving physical contact with the victim(s)". (id. A)

29. The plaintiff was not given any information on how to appeal any classification decision's, where to obtain this information, or who to speak with regarding this issue.

30. The plaintiff did not understand his classification or how to fix his rap sheet so he contacted his appelate lawyers at the time and asked them to contact CC Moss so she could relay to them the error's on the rap sheet, and classification as a sexual offender.

31. A letter dated April 22, 2016 to the plaintiff from his appelate lawyer state's that CC Moss explained to them "that because you were charged with sexual assault and convicted of the lesser-included charge of assault

(i.e. the drop down) you are considerd a sexual offender for purposes of de-
termining levels. This is so because of the relationship between the sexual
assault charge and the lesser charge. In addition, when assessing your status
the department of corrections considers the pre-sentence investigation and
police reports".

32. CC Moss also sent my mittimus, and a paper to my lawyer saying "the
mitts were not the issue, it's the cases on the rap sheet that dropped down
to cases on mitt".

33. The letter refer's to the plaintiff being charged with a sexual assault
and convicted of a lesser included charge of assault which is false.

34. The false charge on the rap sheet is Agg Sex 1 which was thrown out
by the prosecution during the plaintiff's criminal trial.

35. The DOC was aware the plaintiff had went to trial, and due to the lack
of due dilligence by the DOC in investigating and/or obtaining the plaintif-
f's trial transcripts has resulted in the use of an inaccurate rap sheet, fa-
lse alligations in a police report, and hearsay in a psi in determining his
SOTNS which is outrageous.

36. After the initial classification an inmate periodically receives rev-
iews which may effect risk or needs scores, the types of re-classification
reviews consist of a Regular Review, Review Community Release program plac-
ement, Review for overall level reduction, Review due to disciplinary beha-
vior, and Review due to new information.

37. Regular Reviews are initiated every 6 months or annually depending on
the length of time remaining on an inmates sentence which consists of re-as-
sessing all risk and needs scores.

38. The plaintiff has undergone several regular reviews which were compl-
eted without the plaintiff being seen or informed that a regular review has
been initiated as required according to the DOC classification manuel "prior
to beginning this process, the inmate must be seen and informed that a regu-
lar review is being initiated". Pg 41 OCM(rev4/12)

39. The plaintiff has also undergone a review for overall level reduction which also requires an inmate to be seen and informed that a review has been initiated, along with being notified if approved and seen if denied of an overall level reduction but the plaintiff was not seen and informed prior to initiating the review nor was he seen when denied of an overall level reduction as required according to pg 40-41 of the OCM(rev4/12)(id. L)

40. Since the plaintiff did not know he was denied an overall level 2 until over a year later it deprived him the ability to appeal that decision within the 15 day deadline, and the only reason he found out was because he inquired about his prior classification review which in turn was provided with a copy of the previous review on Feb 26, 2021 which stated "level reduction denied. remain overall 3" dated 9/7/19, also due to the lack of the plaintiff's signature on the review confirms he was not seen when denied.(id. B)

41. On June 11, 2021 through freedom of information the plaintiff obtained a classification log dated 10/7/2019 which state's "Do not recommend level reduction due to nature of instant offense". (id. C)

## IV. SEX OFFENDER PROGRAM REQUIREMENT

42. Upon arriving to Brooklyn Correctional Institution (BCI) the plaintiff was presented with an Offender Accountability Plan (OAP) on Aug 13, 2018 which recommends he participate in the following: domestic violence program, sex offender program referral, addiction services referral, and a job.

43. The OAP state's "failure to comply with OAP recommendations or conduct which results in discipline or increases in risk level, shall negatively impact your earning of risk reduction earned credit (RREC) and/or chances of DOC supervised community release and/or parole. (id. I)

44. On March 31, 2020 the plaintiff underwent a sex offender program evaluation by DOC mental health staff at BCI due to his sex offender program referral on his OAP.

45. The plaintiff made the mental health staff aware that he should not have to participate in the sex offender program due to the fact that he went to trial, proved his innocence, and was found NOT GUILTY of a sex offense.

46. The mental health staff responds by saying "due to your psi, and 3VN score their job is to determine whether you need to undergo the sex offender program", and further state's "since you denied the alligations I am going to recommend you for the short track sex offender program". (id. J)

47. Which is confirmed in the comments section of a OAP revision form dated 3/31/20 stating "Assessed, Denies, recommend STSOP" which is the short track sex offender program. (id. K)

48. The plaintiff was coerced into completing the STSOP due to the consequences he faced if he refused to participate which would have resulted in a class A ticket, 25 days loss of RREC, and negatively impact chances of parole/ DOC community release.

49. Upon completion of the STSOP the plaintiff was given a synopsis stating "Mr. Urban expressed difficulty accepting his requirement to attend the short term sex offender program, stating it was unfair because he had been acquitted on his sex assault charges during his trial." (id. H)

## V. FALSEHOOD OF STIGMATIZING LABEL

50. The stigmatizing sex offender label the plaintiff has been burdend by for a charge he was found NOT GUILTY of undoubtly implicates a protected liberty interest.

## VI. STIGMA-PLUS DUE PROCESS

51. The false statements the plaintiff has been burdend by derive from his SOTNS of a S-3 which indicates the DOC's judgment that the plaintiff has been labeled as a sexual offender.

52. The DOC define's a S-3 as "These individuals have a current conviction, pending charge or known history of sexual offenses involving physical contact with the victim(s)." Pg 36 OCM(rev4/12)(id. A)

53. The classification manuel also state's "the sex offense treatment score indicates an inmate has a record or known history of problem sexual behavior. This area will focus on the level of sexual re-offense risk and address program intervention needs." Pg 35 OCM(rev4/12)

54. The sex offender program the plaintiff was required to attend further tarnishe's the plaintiff's reputation, also the location the program was held allowed any inmate, medical staff, correctional officer, counselor, and anyone elese using the main corridor the ability to view who was in the program.

55. The plaintiff's sexual offender label, and S-3 status has also been disseminated to various DOC department's, counselor's, mental health staff, lawyer's, the board of pardons and parole manager/parole board member's, and upon his release his S-3 status will be disseminated to the office of adult probation/his assigned probation officer.

56. In Thomas v. Warden 891 A.2d 1016 (Conn.Super.Ct.2005) the court states "In a decision by this court dated November 17, 2003 it concluded that being labeled as a sex offender when there is no proof that a defendant has commited a sexual offense is seriously damaging to his reputation."

## VII. IMPOSED A TANGIBLE & MATERIAL STATE BURDEN OR STATE IMPOSED ALTERATION OF THE PLAINTIFF'S RIGHT'S OR STATUS

57. The improper label of a sexual offender along with a S-3 status has burdend the plaintiff, and has the potential to further burden the plaintiff in the future god forbid he were to ever return to the DOC because the sexual offender label, and S-3 status are never erased. (id. M)

58. Due to his overall risk level of a 3 caused by his SOTNS of a S-3 has made him ineligible for certain programs, minimum security prisons, obtaining 5 days RREC a month, educational community based pell program, and certain jobs. (id. N)

59. The plaintiff's SOTNS of a S-3 restricts him from obtaining community release, certain programs/jobs, and an overall level reduction.

60. Upon entering the DOC if the plaintiff had not been mislabeled a sexual offender and given an S-3 status he would have been given an S-1 status.

## VIII. ATYPICAL AND SIGNIFICANT HARDSHIP/
## QUALITATIVLY DIFFERENT PUNISHMENT

61. The plaintiff was in compliance with DOC rules when denied an overall level reduction on 9/7/19, denied community release on jan 4, 2020, and denied a maintenance job at BCI on jan 7, 2021 all of which were due to his SOTNS.

62. Inmate's with an S-1 status are routinely approved for level reductions, certain jobs/programs, and community release, but inmate's with a SOTNS of a 2 or greater are routinely denied.

## IX. PUNISHED WITHOUT CLEAR WARRANT OF
## LAW/ DOUBLE JEOPARDY

63. As previously stated the DOC has burdend the plaintiff with various punishments/deprivations due to his wrongfull classification, and the plaintiff was required to complete the short track sex offender program which is used as a punishment and/or a deterrent for sexual re-offense which is outrageous due to the fact that the plaintiff was found not guilty of a sexual assault.

64. 2019 C.G.S. under Article First section 9 cites "Department of Correction Classification of petitoner as a sexual offender despite the fact that the petitoner had been acquitted of a sexual assault charge is clearly unwarranted by law" 49 CS 416

65. The plaintiff expected he would be punished as a person convicted of Burglary, Threatening, and Assault, not punished for a crime he did not commit.

## X. ATTEMPTS TO RECTIFY/EXHAUSTION OF
## ADMINISTRATIVE REMEDIES

66. A letter dated Oct 1, 2020 was sent to David Maiga the Director of Classification, along with a follow up letter dated Jan 1, 2021, and another letter mailed on 6/4/21  which was also scanned then emailed to D.Maiga via his DOC email about the plaintiff's wrongfull classification.

67. A letter dated Dec 1, 2021 was sent to Elizabeth Tugie the Counselor Supervisor of Classification, along with a follow up letter dated Jan 1, 2021,

and another letter mailed on 6/4/21 which was also scanned then emailed to E.Tugie via her DOC email about the plaintiff's wrongfull classification.

69. A letter dated Dec 1, 2020 was sent to Gavin Galligan the Director of Community Release about the plaintiff's classification status, and Halfway House eligibility.

70. A letter dated Feb 2, 2021 was sent to Angel Quiros the Commissioner of Correction along with another letter mailed on 6/4/21 which was also scanned then emailed to A.Quiros via his DOC email about the plaintiff's wrongfull classification.

71. An inmate request was sent to Warden Ronald Cotta of BCI dated Feb 4, 2021, and Mar 28, 2021 regarding a favorable recommendation, and wrongfull classification which he acknowledged receiving but said to the plaintiff "he is not going to answer at this time" on April 23, 2021.

72. A letter was sent to Eulalia Garcia the District Administrator regarding a favorable recommendation, and the plaintiff's wrongfull classification on May 15, 2021.

73. The following grievance's have been filed in regards to the plaintiff's wrongfull classification: use of police reports,psi, and charges to determine the plaintiff's SOTNS, overall level not dropping, SOTNS remaining if the plaintiff were to return to the DOC.

74. All levels of the grievance process have been exhausted with regards to each grievance.

XI. CLAIMS FOR RELIEF

ⅰ In Conclusion, Commissioner Angel Quiros has allowed unconstitutional classification policies to infringe on the plaintiff's rights along with other similary situated inmate's. Director of Classification David Maiga, and Elizabeth Tugie Counselor Supervisor of Classification have enforced, and allowed these policies to continue uninterrupted. Director of Community Release Gavin Galligan has continuely denied inmate's with a SOTNS of a 2 or greater for community release(HWH) when in fact he has no authority to approve an

inmate with a SOTNS of a 2 or greater due to the required favorable recommendation from the Commissioner/Warden prior to approval which are always denied, therefore Mr. Galligan should not be reviewing any inmate with a SOTNS. The plaintiff has made attempts to notify all said defendant's in order to rectify his wrongfull classification which has subsequently resulted in no change to the plaintiff's classification status. Failing to act when notified of the plaintiff's wrongfull classification further shows all defendant's have allowed the plaintiff's right's to be violated under the Fourteenth Amendment, and Fifth Amendment to the United States Constitution, along with Article First section 9 of the Constitution of Connecticut.

XII. RELIEF REQUESTED

  A. Issue a Declaratory Judgment stating that:

  1. Defendants Quiros, Maiga, and Tugie have implemented and enforced policies/procedures used in determining the plaintiff's SOTNS which violated his due process rights causing him to be wrongfully classified as a sexual offender along with burdening him with various deprivation's/punishment's for a crime he did not commit which violated his right's under the Fourteenth, and Fifth Amendment to the United States Constitution, and Article First section 9 of the Constitution of Connecticut.

  B. Issue an Injunction ordering defendants Quiros, Maiga, Tugie, Galligan, or their agents to:

  1. Immediatly eliminate all internal records, medical records, documents, and computer files of any reference to the plaintiff as a sexual offender or as being in need of sex offender treatment or having been required to participate in the short track sex offender program.

  2. Immediatly eliminate and/or rely no further on any not guilty sexual assault charge, police report, and psi.

  3. Immediatly review due process policies and procedures in order to make changes to the way inmate's with a SOTNS based on non-conviction information are assessed by classification, mental health, and community release.

C. Award compensatory damages in the following amounts:

1. $200,000 jointly and severally against defendants Quiros, Maiga, Tugie, and Galligan for the loss of privilages and quality of life in the plaintiffs prison living conditions resulting from his wrongfull classification as a sexual offender. By this demand, plaintiff seeks compensatory damages NOT for mental and emotional injury but for the deprivation of limited liberties enjoyed by inmates with an S-1 status which the plaintiff would of had if he wasn't wrongfully classified as a sexual offender. Deprivations the plaintiff has endured due to his S-3 status has deprived him the ability to receive a overall risk level reduction keeping him confined in a higher security prison, participate in various beneficial programs such as community based pell program, obtain 5 days a month RREC, denied community release, and denied a job to work for the maintenance dept at BCI. The plaintiff would have benefitted immensely if he would have been allowed to engage in the above liberties while incarcerated, and would have helped him with his reintergration back into society after serving a lengthy prison sentence. These deprivations have imposed a significant restraint far beyond the expected circumstances of an individual convicted of Burglay, Threatening, and Assault. As an alternative the plaintiff asks the court to consider presumed damages.

D. Award punitive damages in the following amounts:
1. $50,000 each against defendants Quiros, Maiga, Tugie, and Galligan.

E. Cost of suit, including litigation expenses.

F. Grant such other relief as it may appear the plaintiff is entitled.

I certify under penalty of perjury that the information contained in this complaint is true and accurate to the best of my knowledge. 28 U.S.C. sec 1746

Date: _June 16, 2021_                    Respectfully submitted,

Cody R. Urban #399827
Brooklyn Correctional Inst
59 Hartford Rd
Brooklyn, CT 06234

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

with a sex treatment need score of S-2 or higher and an "I" sub-code (program "interest") shall be referred to sex treatment  program staff for evaluation. In institutions where specialized sex treatment staff are not available, sex offenders with a subcode of "I" shall be considered for transfer to a program institution.

If the individual fits multiple categories, the rating should be based on the highest score, e.g. if an inmate has a history of exhibitionism and also has a conviction for sexual assault, the score should be based on the sexual assault.

Any consideration for a sexual treatment need score based on non-conviction information including but not limited to: an original Sexual Offense charge substituted to a non-Sexual Offense charge/conviction; information discovered in a Pre-Sentence Investigation (PSI) or Police Report which is part of a crime resulting in a conviction that was sexual in nature, sex treatment need history information or due to the receipt of disciplinary reports that are sexual in nature shall require a hearing pursuant to the procedures set forth for sex treatment need scores based on non-conviction information prior to the assignment of the sex treatment need score.  Please refer to Appendix for additional information and forms.

S-5    **Assessment:** These individuals have a current conviction, pending charge or known history of sexual offenses involving physical contact with their victim(s), in addition, the offender uses gratuitous and/or sadistic violence. An offender of this type may have a history of criminal and sexual violence giving them the designation of "Persistent Dangerous Sexual Offender", but a first time offender may qualify if the offender causes extreme physical harm to the victim or there is evidence of ritualistic or sadistic sexual abuse.  In addition, if it is determined that a sex offender inmate scores in the high range on the HARE Psychopathy Scale, the inmate may be scored with an S-5 (based on clinical assessment).

S-4    **Assessment:** These individuals have a current conviction, pending charge or known history of two or more sexual offenses which involved physical sexual contact. This score will be designated for inmates who have two or more sexual assaults on two or more victims.   Physical violence may or may not be evident in the sexual assault cases, but an S-4 score reflects a pattern of behavior. Offenders who score Moderate High to High on risk instruments shall be scored S-4. In addition, an offender who refuses or drops out of treatment may have their score increased to S-4 (based on clinical assessment).

S-3    **Assessment:** These individuals have a current conviction, pending charge or known history of sexual offenses involving physical contact with the victim(s) (necrophilia included).  The offenses may include coercion, manipulation, or exploitation.  This includes an offender who takes advantage of an opportunity where drugs and alcohol

**SECTION III – INITIAL CLASSIFICATION PROCEDURES**

are being used as a tool. An inmate who engages in predatory sexual behavior while incarcerated will be given a score of S-3.

S-2    **Assessment:** These individuals have a current conviction, pending charge or known history of non-contact sexual offense(s) These individuals score Low or Low Moderate on risk instruments. Multiple non-contact offenses may increase risk instrument scores. These behaviors may include but are not limited to:
Voyeurism,
Exhibitionism,
Obscene Telephone Calling (telephone scatalogia),
Use, sale or exchange of child pornography and/or internet child pornography
Promoting Prostitution of a Minor
Other Paraphilias

If an inmate has many occurrences of non-contact offenses or a significant history of non-contact offenses, it may be clinically indicated to raise the score to an S-3.

S-1    **Assessment:** These individuals have no current conviction, pending charge or identified history of sexual offenses. They may self-report having been sexually abused, suffering from compulsive sexual behaviors or obsessive thoughts but have not, based on all available information, committed criminal sexual behaviors. They may suffer from paraphilias such as fetishism but have no history of acting out in any sexually offending manner. These individuals may suffer from other sexual concerns or sexual dysfunction unrelated to any sexual criminal acts.

A sex offender treatment needs score may be increased due to additional background history, current activity, or inmate self report. A sex offender treatment needs score may not be lowered by either clinical staff or classification staff (except when the information utilized for the basis for the original score is found to be in error, the information changes or the information was misinterpreted). Scores may be lowered only by approval from the Commissioner or designee.

S-0    Indicates that a hearing shall take place.

**Sex Treatment Need Subcodes:**

All sub-codes are to be completed or modified (if appropriate) during intake screening and during Classification reviews.

One of the following subcodes, "V" or "U" must be utilized at the time of the initial rating of each individual. All offenders shall be scored with either an "R" or "I" sub-code.

EXHIBIT: B

ATTACHMENT C-7



**State of Connecticut**
**Department of Correction**
*Classification Review Sheet*

| | | | |
|---|---|---|---|
| **Name:** URBAN,CODY RICHARD | | **Number:** 00399827 | |
| **Date of Review:** 2/26/2021 | **Facility:** BROOKLYN CI | **Housing:** B10C | |

## Hearing Type

| | | | |
|---|---|---|---|
| ☐ Initial Review | ☐ Community Release | ☐ Parole Hearing | ☐ Disciplinary Review |
| ☐ Regular Review | ☐ Level Reduction | ☐ New Information | ☐ Institutional Classification Action |

## Risk Scores

| | | | | | |
|---|---|---|---|---|---|
| Escape | 1 | Sev/Viol Offense | 4 | Violence History | 1 |
| Length of Confinement | 3 | Detainers | 1 | | |
| Discipline | 1 | Security Risk Group | 1 | Overall | 3 |

## Need Scores/ Subcodes

| | | | | | |
|---|---|---|---|---|---|
| Medical | 2 | Alcohol/Drug | 3 | Community | 1 |
| Mental Health | 1 | Vocational | 4 | Education | 2 |

## Institution Assignment

| | | | | |
|---|---|---|---|---|
| Program Assignment | | Date | Job Assignment | Date |
| School Assignment | | Date | Outside Clearance | Date |
| | | | Other | Date |

## Eligibility Dates

| | | | |
|---|---|---|---|
| Next Classification Review: 7/4/2021 | Release Date: 5/26/2022 | Level Reduction 9/7/2019 |
| Transitional Supervision: | Community Release: Denied | Parole Eligibility: |
| Home Confinement: | Other: | |

**Comments:** RP completed on 9/7/2019. Level reduction denied. Remain an overall 3.

The assigned sex treatment needs score is not listed on this form. If you 'd like written documentation of this score, you will need to submit an inmate request form to your Unit Counselor.

This signature indicates that I acknowledge that changes have been made to my classification scores and does not imply consent. I also understand that I may appeal in writing to the unit administrator or designee within 15 days of the decision.

| | | |
|---|---|---|
| Inmate Signature | Date | ☐ Inmate Refused to Sign |
| | | ☐ Inmate Declines Copy |
| Staff Witness and Title | Date | ☐ Inmate Waived |

cc: Inmate & Master File

OCPM – REV. 1/2012

EXHIBIT: C

CONNECTICUT DEPARTMENT OF CORRECTION RECLASSIFICATION FORM

NAME: URBAN,CODY RICHARD          NUMBER: 00399827      TYPE: RP
AGE:  26        D.O.B.: ████/1992      SEX: M          RACE: WHITE

TRANSACTION DATE: 10/07/2019          CURRENT FACILITY: BROOKLYN CI
LATEST DOC ADMIT: 02/08/2016      ESTIMATED RELEASE DATE: 00/00/0000

DATE OF LAST R SCORE CHANGE: 07/09/2018 % T.SERVED SINCE R SCORE CHANGE: 30.11
DATE LEV 1 CRITERIA: __/__/____      DATE OF NEXT % OF TIME REVIEW: __/__/__
DATE OF NEXT REGULAR RECLASSIFICATION REVIEW:  01/08/2020
*************************************************************************
RISK LEVEL (R)
*************************************************************************
ESCAPE (E)                    1    SEVER. VIOLENCE/CURR OFFENSE (S)   4
VIOLENCE HISTORY (V)          1    LENGTH OF CONFINEMENT (L)          3
BOND/PENDING CHARGES/DETAINERS (D) 1  DISCIPLINARY (B)                1
SECURITY RISK GROUP (R)       1    OVERALL                            3

RISK SUBCODES:  P  NM DV                    TPAI: 05 CSS:   HIQ:

REASONS FOR SUBCODES: _____

_____

INMATE NEEDS
    FACTOR              SCORE SUBCODES      FACTOR              SCORE SUBCODES
MEDICAL (M)               2    .....    VOC/WORK SKILL (V)       4    U...
MENTAL HEALTH (MH)        1    ....     SEX TREATMENT (S)        3    VN
EDUCATION (E)             2    V....    COMM. RESOURCES(C)       1    LN...
SUBSTANCE ABUSE (T)       3    A...
PROGRAM FACTOR/INMATE NEED EXPLANATION IF REQUIRED: _____

*************************************************************************
CLASSIFICATION COUNSELOR
CHANGES OF INDIVIDUAL RISK LEVELS: E ___ S ___ V ___ L ___ D ___ B ___ R ___
OVERALL RISK SCORE:  R: 3     OVERRIDE CODE: _____
REASONS FOR OVERRIDE,CHANGES IN RISK LEVELS,AGGRAVATING/MITIGATING RISK LEVELS:

RP- All reviews compacted. Do not recommend level reduction
due to nature of instant offense.

_____ SIGNATURE: Suit, CC   DATE: __10_/_7_/_2019_

_____

CLASSIFICATION COMMITTEE
CHANGES OF INDIVIDUAL RISK LEVELS: E ___ S ___ V ___ L ___ D ___ B ___ R ___
REASONS FOR CHANGES: _____
RECOMMENDATIONS FOR OVERALL RISK SCORE: R: 3   OVERRIDE CODE: ____
REASONS IF OVERRIDE: _____   SIGNATURE: CSClements
DATE OF NEXT REVIEW: __/__/__          DATE OF COMMITTEE ACTION: 10 /07/ 19

Do Not Recommend Level Reduction due to Nature of I.O.

WARDEN ACTION
CHANGES OF INDIVIDUAL RISK LEVELS: E ___ S ___ V ___ L ___ D ___ B ___ R ___
REASONS FOR CHANGES: _____

Level reduction not recommended due to
the nature of I.O.

OVERALL RISK SCORE: R: _____   OVERRIDE CODE: _____
REASONS IF OVERRIDE: _____
_____ SIGNATURE: _____ DATE: ___ ___ ___ ___ ___

DIRECTOR OF CLASSIFICATION ACTION (IF REQUIRED)
CHANGES OF INDIVIDUAL RISK LEVELS: E ___ S ___ V ___ L ___ D ___ B ___ R ___
REASONS FOR CHANGES: _____
_____

OVERALL RISK SCORE: R: ____   OVERRIDE CODE: ____
REASONS IF OVERRIDE: _____
_____ SIGNATURE: _____ DATE: ___ ___/___ ___/___ ___

DATE INITIAL CLASSIFICATION COMPLETED: ___ ___/___ ___/___ ___

OVERRIDE CODES:  1. ESCAPE; 2. ASSAULTIVE; 3. MENTAL HEALTH;
4. PHYSICAL HEALTH; 5. SPECIAL PROGRAM NEEDS; 6. OTHER (EXPLAIN IN *REASONS*)

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
DISTRIBUTION:  FACILITY CENTRAL CLASSIFICATION; MASTER FILE

EXHIBIT: D

Attachment C-7



## State of Connecticut
## Department of Correction

### Classification Review Sheet

Name: _Urban Cody_    Number: _399827_

Date of Review: _10/21/13_    Facility: HCC _____    Housing: _____

### Hearing Type

| | | |
|---|---|---|
| ☒ Initial Review | ☐ Community Release | ☐ Parole Hearing | ☐ Disciplinary Review |
| ☐ Regular Review | ☐ Level Reduction | ☒ New Information | ☐ Institutional Classification Action |

### Risk Scores

Escape _____    Sev/Viol Offense _4_    Violent History _____

Length of Confinement _____    Detainers _4_

Discipline _____    Security Risk Group _____    Overall _4_

### Need Scores/Subcodes

Medical _____    Alcohol/Drug _____    Sexual Treatment _____

Mental Health _____    Vocational _____    Residence _____

Education _____

### Institution Assignment

Program Assignment _____    Date _____    Job Assignment _____    Date _____

School Assignment _____    Date _____    Outside Clearance _____    Date _____

Other _____    Date _____

### Eligibility Dates

Next Classification Review: _____    Release Date: _____    Level Reduction: _____

Transitional Supervision: _____    Community Release: _____    Parole Eligibility: _____

Other: _____

Comments: _ACCUSED   Bond = 500,000_

This signature indicates that I acknowledge that changes have been made to my classification scores and does not imply consent. I also understand that I may appeal in writing to the unit administrator or designee within 15 days of the decision.

_____ Inmate Signature    _10-21-13_ Date    ☐ Inmate Refused to Sign

_____ Staff Witness and Title    _____ Date    ☐ Inmate Waived

Cc: Inmate Master File    OCPM 10/02

EXHIBIT: E

CONNECTICUT DEPARTMENT OF CORRECTION INITIAL CLASSIFICATION FORM

NAME: URBAN,CODY RICHARD          NUMBER: 00399827     TYPE: IN
AGE:  21      D.O.B.:      /1992      SEX: M      RACE: WHITE

TRANSACTION DATE: 10/22/2013        CURRENT FACILITY: HARTFORD CC
LATEST DOC ADMIT: 10/18/2013    ESTIMATED RELEASE DATE: 00/00/0000

DATE OF LAST R SCORE CHANGE: 10/18/2013 % T.SERVED SINCE R SCORE CHANGE: N/A
DATE LEV 1 CRITERIA:      /    /       DATE OF NEXT % OF TIME REVIEW:   __/__/__
DATE OF NEXT REGULAR RECLASSIFICATION REVIEW:    /    /
*******************************************************************************
RISK LEVEL (R)
*******************************************************************************
ESCAPE  (E)                      1    SEVER. VIOLENCE/CURR OFFENSE (S)   4
VIOLENCE HISTORY (V)             1    LENGTH OF CONFINEMENT (L)
BOND/PENDING CHARGES/DETAINERS (D) 4  DISCIPLINARY (B)                   1
SECURITY RISK GROUP (R)          1    OVERALL                            4

RISK SUBCODES:   N                          TPAI:    CSS:   HIQ:   4

REASONS FOR SUBCODES: _____

_____

INMATE NEEDS
  FACTOR              SCORE SUBCODES   FACTOR              SCORE SUBCODES
MEDICAL (M)             2   .....      VOC/WORK SKILL (V)    4   U....
MENTAL HEALTH (MH)      1   U....      SEXUAL OFFENDER (S)   3   U.
EDUCATION (E)           3   U....      COMM. RESOURCES (C)   1   .....
SUBSTANCE ABUSE (T)     0
PROGRAM FACTOR/INMATE NEED EXPLANATION IF REQUIRED: _____

*******************************************************************************
CLASSIFICATION COUNSELOR
CHANGES OF INDIVIDUAL RISK LEVELS: E ___ S ___ V ___ L ___ D ___ B ___ R ___
OVERALL RISK SCORE:  R: 4    OVERRIDE CODE: ___
REASONS FOR OVERRIDE,CHANGES IN RISK LEVELS,AGGRAVATING/MITIGATING RISK LEVELS

_____
_____ SIGNATURE: Maloney    DATE: 10/22/13

CLASSIFICATION COMMITTEE
CHANGES OF INDIVIDUAL RISK LEVELS: E ___ S ___ V ___ L ___ D ___ B ___ R ___
REASONS FOR CHANGES:
RECOMMENDATIONS FOR OVERALL RISK SCORE: R: ___  OVERRIDE CODE: ___
REASONS IF OVERRIDE: _____      SIGNATURE: ___
DATE OF NEXT REVIEW:   __/__/__       DATE OF COMMITTEE ACTION:  __/__/__

WARDEN ACTION
CHANGES OF INDIVIDUAL RISK LEVELS: E ___ S ___ V ___ L ___ D ___ B ___ R ___
REASONS FOR CHANGES:
OVERALL RISK SCORE: R: 4   OVERRIDE CODE: ___
REASONS IF OVERRIDE: _____ Warden _____
_____ SIGNATURE: Nood (tm)    DATE: 10/22/13

DIRECTOR OF CLASSIFICATION ACTION (IF REQUIRED)
CHANGES OF INDIVIDUAL RISK LEVELS: E ___ S ___ V ___ L ___ D ___ B ___ R ___
REASONS FOR CHANGES:

OVERALL RISK SCORE: R: ___   OVERRIDE CODE: ___
REASONS IF OVERRIDE:
_____ SIGNATURE: _____ DATE: ___/___/___

DATE INITIAL CLASSIFICATION COMPLETED: ___/___/___

OVERRIDE CODES:  1. ESCAPE; 2. ASSAULTIVE; 3. MENTAL HEALTH;
4. PHYSICAL HEALTH; 5. SPECIAL PROGRAM NEEDS; 6. OTHER (EXPLAIN IN *REASONS*)
*******************************************************************************
DISTRIBUTION:  FACILITY CENTRAL CLASSIFICATION; MASTER FILE

EXHIBIT: F

ATTACHMENT C-7



## State of Connecticut
## Department of Correction
### Classification Review Sheet

| | | | |
|---|---|---|---|
| **Name:** URBAN,CODY RICHARD | | **Number:** 399827 | |
| **Date of Review:** 02/09/16 | **Facility:** HCC | **Housing:** CENTER 3, 15 | |

### Hearing Type

☒ Initial Review    ☐ Community Release    ☐ Parole Hearing    ☐ Disciplinary Review

☐ Regular Review    ☐ Level Reduction    ☐ New Information    ☐ Institutional Classification Action

### Risk Scores

| | | |
|---|---|---|
| Escape | Sev/Viol Offense    4 | Violence History |
| Length of Confinement | Detainers    4 | Overall    4 |
| Discipline | Security Risk Group | |

### Need Scores/ Subcodes

| | | |
|---|---|---|
| Medical | Alcohol/Drug | Community |
| Mental Health | Vocational | Education |

### Institution Assignment

| | | |
|---|---|---|
| Program Assignment | Date | Job Assignment | Date |
| School Assignment | Date | Outside Clearance | Date |
| | | Other | Date |

### Eligibility Dates

| | | |
|---|---|---|
| Next Classification Review: | Release Date: | Level Reduction: |
| Transitional Supervision: | Community Release: | Parole Eligibility: |
| Home Confinement: | Other: | |

**Comments:**   Total bond amount: $500500
Next court date: 3/31/2016 @ A-MIDDLETOWN

The assigned sex treatment needs score is not listed on this form.  If you'd like written documentation of this score, you will need to submit an inmate request form to your Unit Counselor.

This signature indicates that I acknowledge that changes have been made to my classification scores and does not imply consent. I also understand that I may appeal in writing to the unit administrator or designee within 15 days of the decision.

_____    _____
Inmate Signature                              Date

☐ Inmate Refused to Sign

☐ Inmate Declines Copy

_____    _____
Staff Witness and Title                       Date

☐ Inmate Waived

cc: Inmate & Master File

OCPM – REV. 11/14

EXHIBIT: G

CONNECTICUT DEPARTMENT OF CORRECTION INITIAL CLASSIFICATION FORM

NAME: URBAN,CODY RICHARD     NUMBER: 00399827     TYPE: INV
AGE: 23     D.O.B.:     1992     SEX: M     RACE: WHITE

TRANSACTION DATE: 02/09/2016     CURRENT FACILITY: HARTFORD CC
LATEST DOC ADMIT: 02/08/2016     ESTIMATED RELEASE DATE: 00/00/0000

DATE OF LAST R SCORE CHANGE: 02/08/2016 % T.SERVED SINCE R SCORE CHANGE: N/A
DATE LEV 1 CRITERIA:     DATE OF NEXT % OF TIME REVIEW: __/__/___
DATE OF NEXT REGULAR RECLASSIFICATION REVIEW:
**********************************************************************
RISK LEVEL (R)
**********************************************************************
ESCAPE (E)     1     SEVER. VIOLENCE/CURR OFFENSE (S)     4
VIOLENCE HISTORY (V)     1     LENGTH OF CONFINEMENT (L)
BOND/PENDING CHARGES/DETAINERS (D)     4     DISCIPLINARY (B)     1
SECURITY RISK GROUP (R)     1     OVERALL

RISK SUBCODES:     P          TPAI:     CSS:     HIQ:  (4)

REASONS FOR SUBCODES: _____

| INMATE NEEDS | | | | | |
|---|---|---|---|---|---|
| FACTOR | SCORE | SUBCODES | FACTOR | SCORE | SUBCODES |
| MEDICAL (M) | | ..... | VOC/WORK SKILL (V) | 4 | U... |
| MENTAL HEALTH (MH) | 3 | ..... | SEXUAL OFFENDER (S) | 3 | U.. |
| EDUCATION (E) | 2 | V.... | COMM. RESOURCES (C) | 1 | ..... |
| SUBSTANCE ABUSE (T) | 1 | S.... | | | |

PROGRAM FACTOR/INMATE NEED EXPLANATION IF REQUIRED: _____

**********************************************************************
CLASSIFICATION COUNSELOR
CHANGES OF INDIVIDUAL RISK LEVELS: E ___ S ___ V ___ L ___ D ___ B ___ R ___
OVERALL RISK SCORE: R: ___ OVERRIDE CODE: ___
REASONS FOR OVERRIDE, CHANGES IN RISK LEVELS,AGGRAVATING/MITIGATING RISK LEVELS
_____
_____
SIGNATURE: _____ DATE: 02/09/16

CLASSIFICATION COMMITTEE
CHANGES OF INDIVIDUAL RISK LEVELS: E ___ S ___ V ___ L ___ D ___ B ___ R ___
REASONS FOR CHANGES:
RECOMMENDATIONS FOR OVERALL RISK SCORE: R: ___ OVERRIDE CODE:
REASONS IF OVERRIDE:     SIGNATURE:
DATE OF NEXT REVIEW: __/__/__ DATE OF COMMITTEE ACTION: __/__/__

WARDEN ACTION
CHANGES OF INDIVIDUAL RISK LEVELS: E ___ S ___ V ___ L ___ D ___ B ___ R ___
REASONS FOR CHANGES:
OVERALL RISK SCORE: R: 4 OVERRIDE CODE:
REASONS IF OVERRIDE: SIGNATURE: _____ DATE: 02/09/16

DIRECTOR OF CLASSIFICATION ACTION (IF REQUIRED)
CHANGES OF INDIVIDUAL RISK LEVELS: E ___ S ___ V ___ L ___ D ___ B ___ R ___
REASONS FOR CHANGES: _____

OVERALL RISK SCORE: R: ___ OVERRIDE CODE: ___
REASONS IF OVERRIDE: _____
SIGNATURE: _____ DATE: __/__/__

DATE INITIAL CLASSIFICATION COMPLETED: __/__/__

OVERRIDE CODES: 1. ESCAPE; 2. ASSAULTIVE; 3. MENTAL HEALTH;
4. PHYSICAL HEALTH; 5. SPECIAL PROGRAM NEEDS; 6. OTHER (EXPLAIN IN *REASONS*)
**********************************************************************
DISTRIBUTION: FACILITY CENTRAL CLASSIFICATION; MASTER FILE

EXHIBIT: H

**Brooklyn Correctional Institution**
SO Program Synopsis

*March 17, 2021*
Page 1

**CODY RICHARD URBAN**   **INMATE ID #: 00399827**   **28 Years Old**
**DOB:** ▉▉▉▉/1992 **Race: White**   **Gender: Male**
**LOC: 128 B 10C**   **Med Score: 2 Sub Score: .....**   **MH Score: 1 Sub Score: ....**

**03/17/2021 - SO Program Synopsis: Sex Offender Program Synopsis**
**Provider: Edward Gallagher LPC**
**Location of Care: Corrigan Building**

**Encounter Context**
**Facility at time of evaluation:** Corrigan Building
**Age at Time:** 28 Years Old

**Sex Offender Program Synopsis**

**End Date** 03/17/2021
**Program Outcome:**  Completed

**Discharge Summary** Mr. Urban expressed difficulty accepting his requirement to attend the Short Term Sex offender program, stating it was unfair becuse he had been acquitted on his sex assault charges during his trial. While he attended every group and was not disruptive, his participation and completion of assignments was minimal for the majority of the groups. He did improve after this facilitator spoke with him about minimal expectations for completion, and he did appear to understand the concepts as presented. Mr Urban was able to present a minimal relapse prevention plan, but his internalization of group concepts remains unclear. Given his attendance to all sessions, and his completion of a relapse prevention plan, he will be given a program completion.

**Electronically signed by Edward Gallagher LPC on 03/17/2021 at 10:01 AM**

EXHIBIT: I



# Offender Accountability Plan
### Connecticut Department of Correction/Board of Pardons and Paroles

CN 9701
REV 1/10/12

Inmate name: **Urban, Cody Richard**

Inmate number: **399827**

| DOB: ████92 | Sentence date: **3/31/61** | Sentence: **7y** | PED: ████ |
|---|---|---|---|

| Max EOS: | Offense(s): **Assault 3rd** | | |

Upon being fully or partially sentenced to the Department of Correction (DOC) and periodically thereafter, assessment, orientation and classification meetings shall be conducted to determine the programs and services that you should participate in during your term of incarceration. You shall participate in a series of assessments including but not limited to a Risk and Need Assessment (Objective Classification System) and a Treatment Program Assessment Instrument (TPAI). Adjustment to the requirements of institutional living, conduct and behavior in relation to other inmates and staff, and achievements in recommended programming shall also be taken into consideration in assigning programs. Risk and Need assessment and the TAPI shall be used to initiate and monitor your Offender Accountability Plan (OAP). This plan may be modified at any time throughout your incarceration and/or period of community supervision.

The DOC shall use your OAP to schedule, track and monitor your programs, jobs and services. Failure to comply with OAP recommendations, or conduct which results in discipline or increases in risk level, shall negatively impact your earning of Risk Reduction Earned Credit (RREC) and/or chances of DOC supervised community release and/or parole.

If you have a parole eligible sentence, a staff member from the Board of Pardons and Paroles (BOPP) shall meet with you to discuss OAP program expectations at your permanent facility assignment, and shall explain on what basis the Board of Pardons and Paroles shall make future release decisions. The BOPP and DOC shall work with any parole eligible person to ensure compliance with Orientation and OAP requirements prior to being granted parole.

Please note that all OAPs shall have a reentry component that shall address issues prior to release to community programs such as halfway houses, transitional supervision and parole. Offenders who will be discharging end of sentence will have an OAP consisting of reentry and discharge planning, including but not limited to identification procurement.

Your institutional conduct and participation in recommended OAP programs and services is the key to your successful reintegration and shall be monitored throughout the course of your incarceration. It is your responsibility to review your OAP with your counselor/DOC staff member during your incarceration and/or period of community supervision.

*Information regarding program participation shall be maintained in your master file.*

The following are your specific program recommendations:

| | Code: | | Title: | |
|---|---|---|---|---|
| 1. | **02** | | **Domestic Violence Program** | |
| 2. | **S1** | | **Sex Offender Program Referral** | |
| 3. | **A1** | | **Addiction Services Referral** | |
| 4. | **L1** | | **Job** | |
| 5. | ████ | | ████ | |

I have reviewed the above recommendations and understand that I am expected to enroll in and complete the above programs.

| Inmate signature: | Date: 8/13/18 |
|---|---|
| DOC Staff  signature: | Date: 8/13/18 |
| Parole  Staff signature: | Date: |

cc: Inmate master file – section 6

EXHIBIT: J

## Inmate Request Form
### Connecticut Department of Correction

CN 9601
REV 1/31/09

Cody Urban

Inmate number: 399827

Unit: Brooklyn CI

Housing unit: B-14C

Date: Oct 21 2020

Submitted to: Mental Health

**Request:**

Hello you met with me about 5 months ago, and told me I had to take the sex offender program even tho I do not have a sex charge. Could you please explain to me what you used / relied on to determine that.

Thank you — Cody —

*continue on back if necessary*

**Previous action taken:**

*continue on back if necessary*

**Acted on by (print name):**

Title:

**Action taken and/or response:**

YOU WERE REFERRED FOR A SEX OFFENDER EVAL BASED ON YOUR CLASSIFICATION SCORE OF 3VN. THIS SCORE WAS DETERMINED BY THE SUBSTANCE OF THE PSI. YOUR COUNSELOR MAY BETTER ARTICULATE HOW THAT SCORE WAS DETERMINED.   MATT - MH — 10/30/20

*continue on back if necessary*

**Staff signature:**

Date:

EXHIBIT: K



# Offender Accountability Plan - Review Form
**Connecticut Department of Correction/Board of Pardons and Paroles**

CN 9702
10/31/07

| Inmate name:  URBAN,CODY RICHARD | Inmate number:  399827 |
|---|---|

| DOB:  ████1992 | Sentence date:  11/03/2016 | Sentence: 7 Y | PED: 11/13/2021 |
|---|---|---|---|

| Max EOS:  07/09/2022 | Offense(s): 53A061   ASSAULT, THIRD DEGRE |
|---|---|

---

| Date:  3/31/20 | Program Code:  S1 | Title:   SOP Referral |
|---|---|---|

Status:  ☐ Completed   ☐ Added   ☒ Removed (note in comments)   ☐ RR   ☐ RI   ☐ RD   ☒ Other

Comments: Assessed, Denies, Recommend STSOP

Inmate seen:  ☒ Yes   ☐ No   Inmate signature (if applicable): _[signature]_

Staff name (print): _____   Staff signature: _____

---

| Date:  3/31/20 | Program Code:  ST | Title:   Short Track |
|---|---|---|

Status:  ☐ Completed   ☒ Added   ☐ Removed (note in comments)   ☐ RR   ☐ RI   ☐ RD   ☐ Other

Comments:

Inmate seen:  ☐ Yes   ☐ No   Inmate signature (if applicable): _[signature]_

Staff name (print): _____   Staff signature: _____

---

| Date: | Program Code: | Title: |
|---|---|---|

Status:  ☐ Completed   ☐ Added   ☐ Removed (note in comments)   ☐ RR   ☐ RI   ☐ RD   ☐ Other

Comments:

Inmate seen:  ☐ Yes   ☐ No   Inmate signature (if applicable):

Staff name (print   Staff signature:

---

| Date: | Program Code: | Title: |
|---|---|---|

Status:  ☐ Completed   ☐ Added   ☐ Removed (note in comments)   ☐ RR   ☐ RI   ☐ RD   ☐ Other

Comments:

Inmate seen:  ☐ Yes   ☐ No   Inmate signature (if applicable):

Staff name (print):   Staff signature:

---

| Date: | Program Code: | Title: |
|---|---|---|

Status:  ☐ Completed   ☐ Added   ☐ Removed (note in comments)   ☐ RR   ☐ RI   ☐ RD   ☐ Other

Comments:

Inmate seen:  ☐ Yes   ☐ No   Inmate signature (if applicable):

Staff name (print):   Staff signature:

EXHIBIT: L

## SECTION III – INITIAL CLASSIFICATION PROCEDURES

**Community Resource Need Subcodes:**

C =    Completed Community Resources Needs Checklist, filed in master file
E =    Employment need
H =    Housing/Residence need
I =    Identification Confirmed
L =    Long term sentence (greater than or equal to 5 years) - use with C-1 score only
M =    Health Services need (medical/mental health)
N =    Identification needed prior to release
O =    Other need (document on ICF)
P =    Participating in transitional services programming
R =    Refused transition services programming/assistance
S =    Short term sentence (less than 5 years)
U =    Unsentenced

## SECTION IV: RECLASSIFICATION PROCEDURES

### A.  INTRODUCTION

Classification staff periodically review an inmate's risk and needs profile after initial classification. These reviews occur when new information is received (e.g., pre-sentence investigation reports, police reports, mental health evaluations, etc.), when disciplinary behavior prompts a risk change, when a scheduled period of time passes necessitating such a review, and when any kind of Parole Board action is taken.  The Offender Accountability Plan shall be reviewed and updated if necessary during reclassification reviews (RRs) in accordance with the Offender Accountability Plan Manual.

Five different types of reclassification reviews are conducted which may affect an inmate's Overall Risk Level.  Each of these reviews requires varying responses by staff and inmate involvement. **No transaction shall be left open longer than 14 days.**

| Reclassification Review Chart | | |
|---|---|---|
| Type of Review | | Inmate Involvement |
| RR | **Regular Review –** Risk and Need Scores Verified.  Complete Criminal History Checks (In-state and Out-of- State). | Inmate seen prior to beginning the review process, except where safety and security prohibit. The inmate may waive to be seen. |
| RC | **Review Community Release Program Placement** Requires the same criteria as a Regular Review. | Inmate seen - **Mandatory** |
| RP | **Review for Overall Level Reduction –** Percentage of time must be served prior to transaction being initiated. Requires the same criteria as a Regular Review | Inmate notified if approved and **seen** if denied. |

| RD | **Review due to Disciplinary Behavior –** | Inmate seen – except where safety and security prohibit.  In such cases, the inmate shall be notified in writing within 24 hrs of action. |
| RI | **Review due to New Information**<br>To include return from C/R with Violation of Program Provisions (Done under an RI) | Inmate seen – except where safety and security prohibit.  In such cases, the inmate shall be notified in writing within 24 hrs of action. |

**All of the above Classification actions shall be clearly documented on the Inmate Classification Form (ICF) and the Inmate Classification History Form (CN9701) located on top of section 5 of the Inmate Master File.  "All reviews completed" shall be documented on the Inmate Classification Form (ICF), as well as any significant reason/circumstance for a particular risk score or management subcode.**

## B.  REGULAR RECLASSIFICATION REVIEWS – (RR)

**Regular Reviews shall be initiated at least once every six (6) months after the Initial Classification (IN) has been closed.  Level 4 and Level 3 general population inmates with sentences greater than five (5) years remaining on their sentence need only have a Regular Review performed annually.  Inmates currently in the custody of the Department of Correction being held solely for Federal authorities, to include inmates held for ICE, with no pending Connecticut charges, and no Connecticut sentence to serve, need only to have a Regular Review performed annually.**

Regular Reclassification Reviews must occur at the above intervals. Prior to beginning this process, the inmate must be seen and informed that a Regular Review is being initiated.  When warranted, an inmate may receive a Regular Review as the result of a change in internal or external factors which could directly affect an inmate's overall risk level (e.g., a new sentence, sentence reduction, etc.). **When staff complete an RC or RP transaction and document that a complete criminal history check has been conducted, they shall forward the date of the next Regular Review by six (6) months.**

**Five principle activities occur during the Regular Review process.**  These include:

1.    **Review of the Overall Risk Level Appropriateness**

During a Regular Review, an inmate's Overall Risk Level shall be examined to determine the appropriateness based on the offender's adjustment to confinement, disciplinary history, time remaining on all sentences, and the overall risk to the safety and security of the community and facility.  A change may be recommended as an override when substantial aggravating or mitigating circumstances exist which warrant a Risk Level/Overall Risk Level modification.

EXHIBIT: M

# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV 1/31/09

Inmate name: Cody Urban

Inmate number: 399827

Facility/Unit: BCI

Housing unit: B 10C

Date: Mar 12, 2021

Submitted to: CC Ferreira

**Request:**

Will my sex offender treatment need score of a 3 always stay on my Doc Classification File? Meaning if I were to ever return to the DOC on a completly different Case would my current Classification regarding my sex offender treatment need score (3) stay the same?

Thank you!

*continue on back if necessary*

**Previous action taken:**

*continue on back if necessary*

Acted on by (print name):

Title:

**Action taken and/or response:**

Yes your Sex tx Score will remain a 3 VN.

*continue on back if necessary*

Staff signature: *[signature]*

Date: 3/16/21

# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV 1/31/09

Request:

---

### STAFF DIRECTORY

Warden **Cotta** (request box in chow hall)
Captain **Faucher** (request box in chow hall)
Counselor Supervisor **Clements** (request box in chow hall)

| | | |
|---|---|---|
| **PHONES** | C/O Therrien | ("phone trouble" request box in chow hall) |
| **PAROLE (Hearings Only)** | P/O Logan | (place request in counselor box) |
| **PROPERTY** | C/O Griffin | ("A.P." request box in chow hall) |
| **RECORDS DEPARTMENT** | Ms. Pacheco | (place request in counselor box) |
| **SCHOOL** | Mr. Hempel | (request box in chow hall) |
| **KITCHEN SUPERVISOR** | Mr. DiPanni | (place request in U.S. mailbox) |
| **RELIGIOUS SERVICES** | Rev. Deskus | (request box in chow hall) |
| **NOTARY PUBLIC** | Mrs. Downer | (request box in chow hall) |
| **MENTAL HEALTH** | Mr. Eggen | (request box in chow hall) |
| **ADMINISTRATIVE REMEDIES** | C/C Collins | (administrative remedies boxes, **grievances ONLY, no other request will be answered**) |

| **DORM COUNSELORS** | A-Dorm | **CC Jones, Orientation** |
|---|---|---|
| | B-Dorm | **CC Ferreira, Domestic Violence** |
| | C-Dorm | **CC Tramontano, Voices** |
| | D-Dorm | **CC Collins, Domestic Violence** |
| | Classification | **CC Surfus, Good Intentions, Bad Choices** |
| | Re-Entry | **CC Kerwin** |
| | Addiction Services | **CSAC Rexach** |

Submitted to:

EXHIBIT: N

# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV 1/31/09

: Cody Urban          Inmate number: 399827

Unit: BCI          Housing unit: B 10C          Date: Jan 4 2021

Submitted to: BCI Maintenance dept Dobish

**Request:**

Is the reason for me not being hired for the maintenance dept job due to the fact that I am not a level 2 inmate?

*continue on back if necessary*

**Previous action taken:**

*continue on back if necessary*

Acted on by (print name): Michael P. Dobish          Title: Correctional Maintenance Supervisor

**Action taken and/or response:**

Mr. Urban could not be hired to work in Maintenance due to his level. We require our workers to be a level 2. Mr. Urban has always been very helpful.

*continue on back if necessary*

Staff signature:          Date: 1/7/21

EXHIBIT: O

NO. MMX-CR13-0202084T      :    SUPERIOR COURT

STATE OF CONNECTICUT      :    JUDICIAL DISTRICT OF MIDDLESEX

VS.      :    AT MIDDLETOWN, CONNECTICUT

CODY R. URBAN      :    FEBRUARY 8, 2016

## JURY DELIBERATIONS AND VERDICT

### BEFORE THE HONORABLE ELPEDIO N. VITALE, JUDGE AND JURY

A p p e a r a n c e s:

For the State of Connecticut:

     ATTORNEY RUSSELL C. ZENTNER
     Senior Assistant State's Attorney
     One Court Street
     Middletown, CT  06457

For the defendant:

     ATTORNEY WILLIAM F. DOW III
     Jacobs & Dow, LLC
     350 Orange Street
     New Haven, Connecticut 06511

Ordering Party:

     ATTORNEY KENNETH J. BARTSCHI
     Horton, Shields & Knox, P.C.
     90 Gillett Street
     Hartford, Connecticut  06105

     Carrie Bogdan
     Court Recording Monitor
     One Court Street
     Middletown, CT  06457

Okay, either counsel wish to be heard?

ATTY. ZENTNER:  No, Your Honor.

ATTY. DOW:  No, sir.

THE COURT:  Okay.  Madam clerk are we all set?

Okay, summon the jury.

**(WHEREUPON, JURY ENTERS COURTROOM AT 3:19 P.M.)**

THE COURT:  Okay.  Good afternoon ladies and gentlemen, I have your note, it's been marked as Court's Exhibit 7, 2-8-16, we have a verdict signed by madam foreperson.

All right, folks, so the next part of the process, as I've indicated, is the clerk is first going to call the roll.  Then you're going to be asked, meaning madam foreperson, to deliver the verdict orally answering a series of questions that are in sequence.  So just listen carefully to each question and I think it will be self-explanatory once the verdicts are delivered.

You will all be asked, collectively, whether you agree with the verdicts and then the procedure we will follow after that.  Okay.

So, pay now your attention to the clerk.

THE CLERK:  Ladies and gentlemen of the jury, as your names are called please answer here, rise and remain standing.

(WHEREUPON, CLERK CALLS ROLLCALL OF JURORS)

THE CLERK:  Katy Burton, as foreperson of the jury, have you reached a verdict?

1    MS. BURTON (JUROR FOREPERSON):  We have.

2    THE CLERK:  Will the defendant please rise and face

3    the jury?

4    What say you as to the FIRST COUNT, the charge of

5    Assault in the Second Degree in violation of Connecticut

6    General Statute §53a-60(a)(1) is the defendant guilty or

7    not guilty?

8    MS. BURTON (JUROR FOREPERSON):  Not guilty.

9    THE CLERK:  Not guilty of the crime of Assault in

10   the Second Degree in violation of Connecticut General

11   Statute §53a-60(a)(1).

12   What say you as to the First Count, the lesser

13   included offense of Assault in the Third Degree, is the

14   defendant guilty or not guilty?

15   MS. BURTON (JUROR FOREPERSON):  Guilty.

16   THE CLERK:  Guilty of the lesser included offense of

17   Assault in the Third Degree.

18   What say you as to the Second Count, the charge of

19   Assault in the Second Degree by means of a dangerous

20   instrument, other than by means of the discharge of a

21   firearm in violation of Connecticut General Statute

22   §53a-60(a)(2) is the defendant guilty or not guilty?

23   MS. BURTON (JUROR FOREPERSON):  Not guilty.

24   THE CLERK:  Not guilty of the crime of Assault in

25   the Second Degree in violation of Connecticut General

26   Statutes

27   §53a-60(a)(2).

1   What say you as to the Third Count, the charge of

2   Burglary in the First Degree in violation of Connecticut

3   General Statute §53a-101(a)(2) is the defendant guilty or

4   not guilty?

5       MS. BURTON (JUROR FOREPERSON):  Guilty.

6       THE CLERK:  Guilty of the crime of Burglary in the

7   First Degree in violation of Connecticut General Statute

8   §53a-101(a)(2).

9   What say you as to the Fourth Count, the charge of

10  Home Invasion in violation of Connecticut General Statute

11  §53a-100aa(a)(2) is the defendant guilty or not guilty?

12      MS. BURTON (JUROR FOREPERSON):  Not guilty.

13      THE CLERK:  Not guilty of the crime of Home Invasion

14  in violation of Connecticut General Statute §53a-

15  100aa(a)(2).

16  What say you as to the Fourth Count, the lesser

17  included offense of Burglary in the Third Degree is the

18  defendant guilty or not guilty?

19      MS. BURTON (JUROR FOREPERSON):  Guilty.

20      THE CLERK:  Guilty of the crime of Burglary in the

21  Third Degree.

22  What say you as to the Fifth Count, the charge of

23  Sexual Assault in the First Degree in violation of

24  Connecticut General Statutes §53a-70(a)(1), is the

25  defendant guilty or not guilty?

26      MS. BURTON (JUROR FOREPERSON):  Not guilty.

27      THE CLERK:  Not guilty of the crime of Sexual

1   Assault in the First Degree in violation of Connecticut

2   General Statutes §53a-70(a)(1).

3       What say you as to the Sixth Count, the charge of

4   threatening in the First Degree in violation of

5   Connecticut General Statute §53a-61aa(a)(3), is the

6   defendant guilty or not guilty?

7       MS. BURTON (JUROR FOREPERSON):  Not guilty.

8       THE CLERK:  Not guilty of the crime of threatening

9   in the First Degree in violation of Connecticut General

10  Statute §53a-61aa(a)(3).

11      What say you as to the Sixth Count, the lesser

12  included offense of threatening in the Second Degree is

13  the defendant guilty or not guilty?

14      MS. BURTON (JUROR FOREPERSON):  Guilty.

15      THE CLERK:  Guilty of the crime of threatening in

16  the Second Degree.

17      What say you as to the Seventh Count, the charge of

18  carrying a pistol without a permit in violation of

19  Connecticut General Statute §29-35(a) is the defendant

20  guilty or not guilty?

21      MS. BURTON (JUROR FOREPERSON):  Not guilty.

22      THE CLERK:  Not guilty of the crime of carrying a

23  pistol without a permit in violation of Connecticut

24  General Statute §29-35(a).

25      Ladies and gentlemen of the jury, is this your

26  verdict so say you all?

27      THE COURT:  Everyone answer out loud.

1    ALL SIX JURORS:  Yes.

2    THE COURT:  Anybody not agree with the verdicts

3  raise your hand.

4    Okay.

5    You can have a seat.

6    Mr. Dow.

7    ATTY. DOW:  I have nothing.  Nothing, Your Honor.

8  Thank you.

9    THE COURT:  Okay.  The verdicts are ordered accepted

10  and recorded.

11    All right, ladies and gentlemen, that completes your

12  service on this case.  I'm going to discharge you now.

13  Thanks of the Court and the attorneys.  I'm going to ask

14  you now to step into the jury room for just a few

15  moments, okay.

16    **(WHEREUPON, JURY EXCUSED AT 3:27 P.M.)**

17    THE COURT:  Mr. Dow, just so the record is clear,

18  you had asked me about polling the jury and I just want

19  to inquire you did not, you're not making that request?

20    ATTY. DOW:  I am not making that request.  Thank

21  you.

22    ATTY. ZENTNER:  Your Honor, I'm sorry.

23    THE COURT:  Hang on a second.  Okay.  Presentence

24  investigation.  Let's see, six weeks or thereabouts.

25  Okay.  That's not going to work for me.  Let's see, we

26  can go out to -- how is March 28, 29, 30th, anytime that

27  week counsel?

Exhibit: P

| Directive Number 9.2 | Effective Date 7/1/2006 | Page 3 of 14 |
|---|---|---|
| Title | Offender Classification | |

Correctional Centers). Risk and needs assessments shall be completed in accordance with Section 8 of this Directive.

C.  <u>York Correctional Institution</u>. Any sentenced and/or pretrial female inmate shall be admitted to York Correctional Institution. Risk and needs assessments shall be completed as required in Section 8 of this Directive.

D.  <u>Manson Youth Institution</u>. Any sentenced and/or pretrial male inmate age 14-17 shall be directly admitted to Manson Youth Institution. Risk and needs assessments shall be completed as required in Section 8 of this Directive.

E.  <u>Juvenile Offenders (ages 14 and 15)</u>. Manson Youth Institution shall house all male juvenile offenders and York Correctional Institution shall house all female juvenile offenders. No other facility shall knowingly accept a juvenile offender. Any facility receiving an offender in this category shall immediately report the admission to the Offender Classification and Population Management Unit. The receiving facility shall also make an immediate psychiatric referral to ensure that qualified staff evaluate the offender as soon as possible upon admission in accordance with Administrative Directive 8.5, Mental Health Services. In addition, the receiving facility shall place the juvenile in Administrative Detention and make an immediate request for priority transfer to Manson Youth Institution as appropriate. Whenever possible, prior to transfer, facility classification staff shall complete, at a minimum, an initial risk assessment. Both Manson Youth Institution and York Correctional Institution shall develop Unit Directives that provide for the unique orientation, housing, and program needs of the juvenile offender.

8.  <u>Classification Assessment</u>. Offender classification assessments shall be based upon the individual risk and needs of the inmate.

A.  <u>Risk Assessment</u>. An inmate's risk assessment shall represent the inmate's potential for violence, escape, or disruption of the orderly functioning of a facility or other place of confinement. The level of risk is determined by rating the following factors:



1.  History of escape;
2.  Severity/violence of the current offense;
3.  History of violence;
4.  Length of sentence;
5.  Presence of pending charges, bond amount and/or detainers;
6.  Discipline history; and,
7.  Security Risk Group membership.

B.  <u>Inmate Needs Assessment</u>. An inmate's needs shall be assessed in the following areas:

1.  Medical and health care;
2.  Mental health care;
3.  Education;
4.  Vocational training and work skills;
5.  Substance abuse treatment;
6.  Sex offender treatment; and,
7.  Community resources.

| Directive Number 9.2 | Effective Date 7/1/2006 | Page 4 of 14 |
|---|---|---|
| Title | Offender Classification | |

Assessment of inmate needs shall be accomplished by classification staff in conjunction with staff responsible for the evaluation and provision of services for the need area.

C. <u>Overall Risk Score</u>. An overall classification assessment score shall be determined for each inmate. An overall risk score is determined by the highest rating assigned to any of the seven (7) factors outlined in section 8(A) of this Directive, with the exception of the sex offender treatment need score in Section 8(B) of this Directive. No inmate with a sex offender treatment need score of 2 or greater shall be assigned an overall score below level 3 without authorization from the Commissioner or designee. The overall score shall be assigned taking into account the inmate's risk assessments and behavior during confinement.

D. <u>Overrides</u>. An overall risk score may be increased or decreased through an override. An override of the inmate's overall risk score shall be documented in writing and approved by the Unit Administrator in consultation with the Director of Offender Classification and Population Management or designee. An override shall not be used to decrease an inmate's risk level score more than once during any term of continuous sentenced incarceration. No inmate shall be overridden to level 1.

9. <u>Initial Classification Review</u>. A preliminary classification risk assessment shall begin within the first two (2) business days of commitment. A preliminary risk classification shall be determined prior to transfer to a level 3 or higher risk level confinement. Full initial classification shall be completed prior to any transfer to any level 2 facility. Within 14 days of commitment to the Department, the initial overall risk score shall be assigned. Within 30 days, the needs assessment and full initial classification shall be completed.

10. <u>Reclassification Review</u>. After initial classification, the inmate's risk level and needs shall be regularly reviewed or immediately following any change in an inmate's status that may affect the risk score as follows:

A. <u>Regular Reclassification</u>. An inmate's risk and needs shall be reviewed every six (6) months after the initial classification has been established with the exception of the following:

1. annually for level 3 and 4 general population inmates with greater than five (5) years remaining on their sentence; and,

2. inmates currently in the custody of the Department being held solely for federal authorities, to include inmates held for the United States Department of Homeland Security (Bureau of Immigration and Customs Enforcement), with no pending Connecticut charges, and no Connecticut sentence to serve, need only to have a regular review conducted annually.

B. <u>Risk Level Reductions</u>. A reduction of the inmate's risk level shall be reviewed as follows:

1. <u>Reduction from Overall Risk Level 5</u>. All inmates assigned to overall risk level 5 will be assigned to Administrative Segregation. Inmates approved for removal from

| Directive Number 9.2 | Effective Date 7/1/2006 | Page 5 of 14 |
|---|---|---|
| Title | Offender Classification | |

Administrative Segregation as per Administrative Directive 9.4, Restrictive Status, shall be reduced to the appropriate overall risk level 4 status. Any inmate assigned to Administrative Segregation shall not have the risk level reduced without the approval of the Commissioner or designee. Any inmate assigned to risk level 5 shall be reviewed at a minimum, annually for regular review or upon completion of the Administrative Segregation Phase Program.

2. <u>Reductions from Risk Level 4 to 3 and Risk Level 3 to 2</u>. Reductions of risk level shall be considered after a sentenced inmate has completed a prescribed amount of time in confinement as noted below. Any inmate serving a life sentence with no possibility of parole or release is not eligible for a risk level decrease without the review and approval of the Director of Offender Classification and Population Management. The percentage of time served for determinate sentences shall be computed on the estimated release date for offenses committed prior to October 1, 1994, and on the maximum release date for offenses committed on or after October 1, 1994. The percentage of time served for indeterminate sentences shall be computed based on the projected discharge date. Parole status shall only be considered when a firm Voted to Parole (VTP) Date has been granted by the Board of Pardons and Paroles, at which time the VTP Date may be considered the release date for percentage of time calculations. Any inmate serving a sentence for a sex related offense or having a history of sex related offenses shall be approved by the Commissioner or designee prior to being classified below risk level 3. If not approved, the reason for a denial of a routine level reduction shall be documented on the Offender Classification Form (OCF). The schedule for risk level reductions and eligibility criteria for these reductions shall be as follows:

a. <u>Level 4 to 3</u>. Inmates must serve 35% of their time since their last risk score change and must be free from Class A disciplinary action for the preceding 120 days and Class B disciplinary action for the preceding 90 days.

b. <u>Level 3 to 2</u>. Inmates must serve 30% of their time since their last risk score change and must be free from Class A disciplinary action for the preceding 120 days and Class B disciplinary action for the preceding 90 days.

Once an inmate meets the eligibility criteria above, a risk level reduction review shall be completed.

An overall level 4 inmate with more than fifteen (15) years left to serve on a sentence shall not be reduced to an overall level 3 without consulting with the Director of Offender Classification and Population Management or designee. An overall level 3 inmate with more than seven (7) years left to serve on a sentence shall not be reduced to an overall level 2 without consulting with the Director of