## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CODY R. URBAN,
  *Plaintiff*,

    v.

ANGEL QUIROS, ET AL.
  *Defendants.*

No. 3:21-cv-00919 (OAW)

## INITIAL REVIEW ORDER

Plaintiff is an inmate who is housed at Brooklyn Correctional Institution

("Brooklyn") in the custody of the Department of Correction ("DOC").  Compl. (ECF No.

1) (July 6, 2021).  In his first-filed complaint, Plaintiff asserted claims under 42 U.S.C. §

1983 against Commissioner Angel Quiros, Director of Classification David Maiga,

Counselor Supervisor of Classification Elizabeth Tugie, and Director of Community

Release Gavin Galligan.  *Id.*  Plaintiff also paid the court filing fee.

With the court's leave, Plaintiff amended his complaint.  Order (ECF No. 16)

(Sept. 9, 2021).  The amended complaint was docketed and became the operative

complaint. Am. Compl. (ECF No. 17) (Sept. 14, 2021).  The amended complaint alleges

violations of Plaintiff's rights under the Fifth and Fourteenth Amendments to the United

States Constitution against the same defendants, plus Counselor Moss and Counselor

Doolittle.[1]  *Id.*  He seeks damages, a declaratory judgment, and injunctive relief.  *Id.* at

p. 8.

---

[1] The court will not address Plaintiff's state constitutional claims now because this review for purposes of
28 U.S.C. § 1915A is limited to federal law claims.  That is because the core purpose of an initial review
order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in
federal court and should be served upon any of the named defendants.  If there are no facially plausible
federal law claims against any of the named defendants, then the court will decline to exercise

For the following reasons, the court will permit Plaintiff to proceed on his Fourteenth Amendment procedural due process claims against Counselor Supervisor Tugie and Director Maiga.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[2]

As a result of an incident occurring in October 2013, Plaintiff was charged with assault in the second degree, including the lesser offense of assault in the third degree; assault in the second degree by means of a dangerous instrument; burglary in the first degree; home invasion, including a lesser included offense of burglary in the third degree; sexual assault in the first degree; threatening in the first degree, including a lesser included offense of threatening in the second degree; and carrying a pistol without a permit.  Am. Compl. at ¶ 1 (ECF No. 1).

Plaintiff was found not guilty of assault in the second degree, assault in the second degree by means of a dangerous instrument, home invasion, sexual assault in the first degree, threatening in the first degree, and carrying a pistol without a permit. *Id.* at ¶ 3.  He was found guilty of assault in the third degree, burglary in the first degree and third degree, and threatening in the second degree.  *Id.* at ¶ 4.  The burglary in the third degree conviction was later vacated by the trial judge.  *Id.* at ¶ 5.

---

supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.  On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment.  More generally, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

[2] The following background reflects Plaintiff's account of the relevant facts as stated in his Amended Complaint.

Plaintiff was sentenced to fifteen years of confinement, execution suspended after seven years in prison, with five years of probation on the first-degree burglary conviction; one year of confinement on the second-degree threatening conviction; and one year of confinement on the third-degree assault conviction.  *Id.* at ¶ 6.  Plaintiff is currently serving these sentences, which run concurrently.  *Id.*

Upon entering the Connecticut DOC, an inmate receives a classification, including risk and need scores, within fourteen days after admission.  *Id.* at ¶ 7.  The need score determines treatment and programs consistent with medical and mental health care, education, vocational training, work skills, substance abuse treatment, sex offender treatment and community resources.  *Id.* at ¶ 8.  The risk score reflects the inmate's history of escape; the severity and violence of his offense; his history of violence; the length of his sentence; the presence of pending charges and bond amount and detainers; his disciplinary history; and his security risk group membership.  *Id.* at ¶ 9.  The overall risk score indicates an inmate's "external and internal physical and structural security."  *Id.* at ¶ 10.  Each risk and need score is rated on a scale of one through five (five is the highest risk).  *Id.* at ¶ 11.  According to Plaintiff, the DOC characterizes the sex offender treatment score as a needs score even though it is essentially a risk score.  *Id.* at ¶ 16.

Plaintiff first entered DOC custody on October 18, 2013, while awaiting his trial, and he received an initial classification assigning him a sexual offender treatment need score ("SOTNS") on October 22, 2013.  *Id.* at ¶ 18.  At that time, Plaintiff was not notified that such initial classification had taken place or that he had been assigned an SOTN score.  *Id.* at ¶ 21.  Plaintiff made bond on December 24, 2013, and remained at

liberty until the jury rendered its verdict.  *Id.* at ¶ 19.  After he re-entered DOC custody, he was again assigned an SOTNS.  *Id.*

On April 7, 2016, Plaintiff arrived at MacDougall-Walker Correctional Institution. Correctional Counselor Moss handled Plaintiff's classification assessment, and Plaintiff was told for the first time that he was classified as a sexual offender.  *Id.* at ¶ 22. Plaintiff attempted to inform Moss that he had been found not guilty of a sexual assault, but Moss allegedly disregarded this fact and his classification remained unchanged.  *Id.* at ¶ 23.  Moss showed him his "rap sheet," which Plaintiff asserts contained several errors, including a false charge that had never been charged at his trial.  *Id.* at ¶ 24. Plaintiff informed Moss of these errors.  *Id.*

The DOC classification policy permits consideration of non-conviction information when assigning risk and needs classifications, such as an original sexual offense charge that was substituted to a non-sexual offense charge or conviction, or information discovered in a pre-sentence investigation ("PSI") or police report that is part of a crime resulting in a conviction that was sexual in nature.  *Id.* at ¶ 25, *see also id.* at pp. 24-25. Plaintiff asserts he did not have any substituted charge relevant to the sexual assault charge for which he was found not guilty.  *Id.* at ¶ 26.

The DOC classification policy provides for a hearing prior to the assignment of an SOTNS.  *Id.* at ¶ 27.  Although Moss provided Plaintiff with a hearing in April 2016 for his SOTNS due to DOC's decision to assign him an SOTNS of 3 and to label him as a sexual offender, Plaintiff's SOTNS changed only as to the subcode, from U (unverified) to VN (verified, non-conviction).  *Id.* at ¶ 28-29.  Plaintiff did not have information about

what documents DOC relied upon in rendering his SOTNS assignment, nor did DOC provide him with any meaningful explanation of the decision. *Id.* at ¶ 31.

Plaintiff was not provided with any information on how to appeal his classification decision, how to obtain this information, or with whom to speak about this information. *Id.* at ¶ 32. Because he did not understand his classification or how to fix his "rap sheet," he contacted his appellate lawyers and asked them to contact Counselor Moss for information about the errors on the "rap sheet" and his sexual offender classification. *Id.* at ¶ 32.

A letter dated April 22, 2016, to Plaintiff from his appellate lawyer stated that Correctional Counselor Moss had explained that he was considered a sexual offender in determining his "levels" because he was charged with sexual assault and convicted of the lesser-included charge of assault. *Id.* at ¶ 34. The letter allegedly stated that "[t]his is so because of the relationship between the sexual assault charge and the lesser charge. In addition, when assessing your status the [DOC] considers the pre-sentence investigation and police reports." *Id.*

Counselor Moss sent Plaintiff's lawyer his mittimus and a paper stating that "the mitts were not the issue, it's the cases on the rap sheet that dropped down to cases on mitt." *Id.* at ¶ 35. The letter referred to Plaintiff being charged with a sexual assault and convicted of a lesser included charge of assault, although Plaintiff asserts that the assault charge was not a lesser included charge of sexual assault. *Id.* at ¶ 36. The "rap sheet" includes the charge of aggravated sexual assault in the first degree, which Plaintiff states was thrown out by the prosecution during his criminal trial. *Id.*

Counselor Moss was the hearing officer for Plaintiff's classification hearing.  *Id.*

Due to DOC policy, Plaintiff was not permitted to present live witness testimony nor was

he permitted to view his PSI or police report in advance of his classification hearing. *Id.*

at ¶ 37.  Counselor Moss was aware that he had not been convicted of sexual assault,

but Plaintiff asserts that due to the lack due diligence by DOC staff, his SOTNS was

determined according to an inaccurate rap sheet, false allegations in a police report,

and hearsay.  *Id.* at ¶ 38.

After an initial classification, an inmate receives periodic reviews for his risk and

needs scores.  *Id.* at ¶ 39.  An inmate can receive a Regular Review, Review of

Community Release Program Placement, Review for Overall Level Reduction, Review

Due to Disciplinary Behavior, and a Review Due to New Information.  *Id.*  Regular

reviews are initiated every six months or annually depending on the time remaining on

the inmate's sentence.  *Id.* at ¶ 40.[3]

Plaintiff has had several Regular Reviews that were completed without seeing

him or informing him that a regular review had been initiated as required by the DOC

classification manual.  *Id.* at ¶ 41

Plaintiff had a Review of Overall Level Reduction on September 7, 2019, which

required that he be seen, be informed that a review had been initiated, and be notified if

his reduction was approved or seen if it was denied.  *Id.* at ¶¶ 42-43; *see* ex. B.

However, Plaintiff was not seen, was not informed about the initiation of the review, and

---

[3] According to the inmate classification manual attached to the Amended Complaint, inmates are entitled
to regular reviews of their treatment needs and risk level scores.  *See* Am. Compl. at ex. L.  The manual
provides that an inmate is seen prior to the beginning of a regular review process; for an Overall Level
Reduction  review, the inmate is notified if an overall level reduction is approved, and is "seen" if it is
denied.  *Id.*

he was not seen when his overall reduction was denied.  *Id.*  Plaintiff could not appeal this denial because he was not aware that his overall level reduction had been denied. *Id.* at ¶ 43.[4]

After arriving at Brooklyn, Plaintiff received an Offender Accountability Plan ("OAP") on August 13, 2013, which recommended that he participate in a domestic violence program, a sex offender program referral, an addiction services referral, and a job assignment.  *Id.* at ¶ 45.

The OAP states that "failure to comply with OAP recommendations or conduct which results in discipline or increases in risk level" will have a negative impact on Risk Reduction Earned Credit earnings and chances of participating in supervised community release and/or parole.  *Id.* at ¶ 46.

On March 31, 2020, Plaintiff had a sex offender program evaluation by DOC mental health staff at Brooklyn due to his sex offender program referral on his OAP.  *Id.* at ¶ 47.  He informed mental health staff that he should not have to participate in the sex offender program because he was not found guilty of a sex offense.  *Id.* at ¶ 48. Mental health staff responded by saying that they needed to determine whether he needed to participate in a sex offender program and that he would be recommended for the short track sex offender program since he had denied the allegations of sexual assault.  *Id.* at ¶¶ 49-50.

Plaintiff was told that he had to complete the short track sexual offender program or he would face consequences of a Class A disciplinary report, 25 days' loss of Risk

---

[4] Plaintiff received through a Freedom of Information Act request a classification log dated October 7, 2019, which indicated that he had not been recommended a level reduction due to the nature of his offense.  *Id.* at ¶ 44.

Reduction Earned Credit ("RREC") and a negative impact on his chances of participating in a parole/DOC community release program if he refused to do so.  *Id.* at ¶ 52.

Upon completion of the sex offender treatment program, Plaintiff was provided with a synopsis stating that he had expressed difficulty accepting this requirement to attend the sex offender program and had expressed that it was unfair due to his acquittal on the sex assault charges.  *Id.* at ¶ 53

Plaintiff's sex offender label and SOTNS Level 3 will allegedly burden him in the future if he re-enters DOC because it will never be erased.  *Id.* at ¶¶ 55, 61.  His SOTNS Level 3 allegedly restricts his eligiblity to be housed in minimum security prisons; to earn five days of RREC a month; to participate in educational community-based Pell programs, certain job assignments, and community release; and it prevents him from obtaining an Overall Reduction Level from a 3 to a 2.  *Id.* at ¶ 62-63.  By contrast, inmates who have an S-1 status are routinely approved for overall level reductions and certain job assignments and are permitted to participate in programs.  *Id.* at ¶¶ 64, 66.

Due to his SOTNS, Plaintiff was denied an overall level reduction on September 7, 2019, community release on January 4, 2021, and a maintenance job on January 7, 2021.  *Id.* at ¶ 65.

Plaintiff complained about his wrongful classification to Director Maiga by letters dated October 1, 2020; January 1, 2021; and June 4, 2021.  *Id.* at ¶ 77.  He also complained about his wrongful classification to Counselor Supervisor of Classification Tugie by letters dated December 1, 2020; January 1, 2021; and June 4, 2021.  *Id.* at ¶ 78.  He sent a letter dated December 1, 2020, to Director of Community Release

Galligan about his classification status and halfway house eligibility. *Id.* at ¶ 79. He sent letters dated February 2, 2021, and June 4, 2021, to Commissioner Quiros about his wrongful classification. *Id.* at ¶ 80.

On June 11, 2021, Plaintiff obtained an internal DOC classification log dated October 22, 2013, which listed him as a sexual offender with a score of 3 and a subcode U. *Id.* at ¶ 17. He also received an internal classification log dated February 9, 2016, which listed him as a sexual offender with a score of 3 and subcode of U assigned through Counselor Doolittle. *Id.* at ¶ 20.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is

and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by pro se plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

III.   **DISCUSSION**

Plaintiff's amended complaint asserts claims based on violations of his constitutional rights under the Fifth Amendment's Double Jeopardy Clause and the Fourteenth Amendment's Procedural Due Process Clause and Equal Protection Clause. The court will first consider whether Plaintiff has alleged any plausible claims for damages against the defendants in their individual capacities.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official."  *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

A.   **Fourteenth Amendment Due Process**

The court construes Plaintiff's amended complaint as asserting a procedural due process violation based on a stigma-plus theory against Defendants.

The Fourteenth Amendment's Due Process Clause "protects persons against deprivations of life, liberty, or property."  U.S Const. amend. XIV.  In determining whether an incarcerated individual has stated a procedural due process claim, a court "first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

To prevail on a "stigma-plus" claim, a plaintiff must allege two distinct elements: "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation,

that is capable of being proved false, and that he or she claims is false [the stigma], and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's rights or status [the plus]." *Id.* at 81 (internal quotation marks and citation omitted). The plus element must involve "specific and adverse action [by the state defendant] clearly restricting the plaintiff's liberty." *Velez v. Levy*, 401 F.3d 75, 87-88 (2d Cir. 2005) (citations omitted). "This state-imposed alteration of status or burden must be 'in addition to the stigmatizing statement.'" *Vega*, 596 F.3d at 81 (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). "However, 'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Sadallah*, 383 F.3d at 38 (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)).

If the plaintiff can demonstrate a liberty interest deprivation, he or she also must demonstrate that the liberty interest was deprived without due process of law. *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006). "Stated differently, the availability of adequate process defeats a stigma-plus claim." *Id.*

Plaintiff sufficiently alleges the first prong based on his being labeled a sex offender as he was not a convicted sex offender in 2016 and his SOTNS was allegedly based on false non-conviction information. For initial pleading purposes, Plaintiff has also satisfied the second prong or the "plus" because he asserts that his sex offender label and SOTNS has rendered him ineligible for certain job assignments, prison programs, lower security prisons, and the ability to earn five days of RREC a month; has required him to participate in sex offender treatment; and has resulted in the denial of an overall level reduction, denial of a maintenance job, and denial of community

release.  *See Knight v. Semple*, No. 3:18-CV-703 (SRU), 2020 WL 1914927, at *3 (D. Conn. Apr. 20, 2020) (noting inmate-plaintiff sufficiently pled for purposes of initial review the "plus" portion of the stigma-plus test based on (1) not being able to reach level 2 status, (2) forfeiting good time, (3) not being eligible for transitional supervision, parole, or a halfway house, and (4) being viewed as a sex offender upon release from custody).

Plaintiff's stigma-plus claims are, however, subject to the relevant statute of limitations.  In Connecticut, the three-year limitations period set forth in Conn. Gen. Stat. § 52-577 is applicable to claims asserted under section 1983.  *See Lounsbury v. Jeffries*, 25 F.3d 131, 132-34 (2d Cir. 1994).  The date on which a section 1983 claim accrues, however, is a "question of federal law."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  In determining whether an action is barred by the statute of limitations, a federal cause of action accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."  *Id.* (internal quotation marks and citations omitted).  Put another way, "accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action."  *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (internal quotation marks and citation omitted).

Although the statute of limitations ordinarily is an affirmative defense, the court may dismiss a claim *sua sponte* where the allegations asserted in the complaint demonstrate that the relief sought is barred by the applicable statute of limitations.  *See Walters v. Industrial and Commercial Bank of China*, Ltd., 651 F.3d 280, 293 (2d Cir. 2011) (holding that a district court "may dismiss an action *sua sponte* on limitations grounds in certain circumstances where 'the facts supporting the statute of limitation

13

defense are set forth in the papers plaintiff himself submitted.'") (quoting *Leonhard v. United States*, 633 F.2d 599, 600 n.11 (2d Cir. 1980)), *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a district court may dismiss a complaint on initial review based on a defense, such as the statute of limitations, that appears on the face of the complaint).

Here, it is clear from the face of the amended complaint that as of April 2016, Plaintiff was aware that his sexual offender classification/SOTNS was based on the allegedly false charge of sexual assault. *See* Am. Compl. at ¶¶ 33-34.  Because Plaintiff filed his complaint on July 6, 2021, but was aware that his classification/SOTNS was based on the allegedly false charge of sexual assault in April 2016, Plaintiff's due process claim based on such classification/SOTNS are time barred and must be dismissed.

### B.    Overall Level Reduction Denial

Plaintiff's amended complaint also raises due process concerns in connection with his regular reviews and denial of his Overall Level Reduction on September 7, 2019.  He alleges that he has not had any notification of the Level Reduction denial so that he could file an appeal.  Am. Compl. at ¶¶ 42-43.

For purposes of this ruling only, the court assumes that Plaintiff has a stigma-plus liberty interest in his SOTNS.  For an administrative decision, due process requires that an inmate be provided "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter.  *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).   Under *Proctor v. LeClaire*, due process requires that prison officials engage in periodic review of the administrative

confinement, although it does not require that the inmate receive a hearing, be present, or provide statements for these periodic reviews.   846 F.3d 597, 609-12 (2d Cir. 2017) (quotation marks omitted) (describing requirements for periodic reviews) (quoting *Hewitt*, 459 U.S. at 476).   However, it is not clear whether *Hewitt* or *Proctor* applies to review of a sex offender classification decision.  Thus, the court will permit Plaintiff to proceed on this due process claim for further development of whether Plaintiff has an actual liberty interest in his continuing classification and if so, whether he was denied any process due in connection with review of his SOTNS/ sex offender classification.  Such claim may proceed against Director Maiga and Counselor Supervisor Tugie, who both were plausibly directly involved with his review.  *See Tangreti*, 983 F.3d at 620.

Plaintiff has alleged that he wrote to Quiros and Galligan about his classification status.   Courts have, however, generally concluded that the receipt of letters or grievances do not amount to personal involvement sufficient to plausibly allege personal involvement in a constitutional deprivation.  *See Reid v. City of New York*, No. 20CV644 (GBD/JLC), 2021 WL 3477243, at *19 (S.D.N.Y. Aug. 6, 2021) (citation omitted).  Plaintiff has not otherwise alleged the personal involvement of Defendants Doolittle or Moss in his reviews.   Accordingly, the court will dismiss Plaintiff's Fourteenth Amendment procedural due process claim in connection with his reviews against Quiros, Galligan, Doolittle and Moss in their individual capacities.

### C.  Fourteenth Amendment Equal Protection Claim

Plaintiff alleges that he was denied access to jobs or programs that are afforded to inmates with a status of S-1. Am. Compl. at ¶ 64.  He alleges that there was no rational basis for treating him differently than other similarly situated inmates by

assigning him a SOTNS of S-3 based on non-conviction information, or for treating him differently than other inmates convicted of non-sexually related offenses.

The Fourteenth Amendment Equal Protection Clause does not mandate identical treatment for each individual but "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). A plaintiff must demonstrate evidence of "purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).

Even when a suspect classification is not at issue, the Equal Protection Clause still requires that individuals be treated the same as "similarly situated individuals." *Fortress Bible Church v. Feiner,* 694 F.3d 208, 222 (2d Cir. 2012). Thus, a plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Second Circuit, class-of-one plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).

The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *See Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

Plaintiff has not alleged a membership in a suspect class because neither prisoners in general nor sex offenders in particular are a suspect class. *See Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012). Accordingly, Plaintiff must proceed as a "class of one." Plaintiff has not alleged facts suggesting that he was treated differently from any comparators so similar as to indicate the lack of a legitimate purpose by assigning him his SOTNS, or treating him differently than other inmates convicted of non-sexually related offenses. *See King v. New York State Div. of Parole,* 260 F. App'x. 375, 379–80 (2d Cir. 2008) (affirming dismissal of equal protection class of one claim where petitioner "failed to identify a single individual with whom he can be compared for Equal Protection purposes"); *see, e.g., Rossi v. Fishcer*, No. 13-CV-3167 PKC DF, 2015 WL 769551, at *13 (S.D.N.Y. Feb. 24, 2015) ("Courts in the Second Circuit have emphasized that 'it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently.'") (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994)); *see also Petitpas v. Martin*, 2021 WL 6101469, at *2 (2d Cir. Dec. 22, 2021) (finding that an inmate's Fourteenth Amendment equal protection challenge to a DOC policy that treated inmates with sexual treatment needs scores of 2 or greater differently than those without sexual treatment need scores of 2 or greater was

undermined by his failure to demonstrate that these two groups are similarly situated or, for the purpose of his "class of one" challenge, that he was similarly situated to anyone in the latter group).  Accordingly, Plaintiff's Fourteenth Amendment equal protection claim must be dismissed as not plausible.

### D.    Fifth Amendment Double Jeopardy

Plaintiff asserts that his classification as a sex offender violates his Fifth Amendment right to be free from double jeopardy.  His allegations indicate that his sex offender classification (despite never having committed a sex offense) is resulting in punishment for a crime that he did not commit.  Am. Compl. At p. 13, 65.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment, provides that a person shall not "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V. "The Clause protects against both a subsequent prosecution for the same offense after acquittal or conviction as well as multiple punishments for the same offense."  *United States v. Hernandez-Fundora*, 58 F.3d 802, 805 (2d Cir.) (internal quotation marks and citation omitted), *cert. denied*, 515 U.S. 1127 (1995).

The Double Jeopardy Clause is implicated only in proceedings that are "essentially criminal."  *Breed v. Jones*, 421 U.S. 519, 528 (1975); *see United States ex rel. Marcus v. Hess*, 317 U.S. 537, 548-49 (1943) (only "actions intended to authorize criminal punishment to vindicate public justice ... subject the defendant to 'jeopardy' within the constitutional meaning"); *see also United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 362 (1984) ("Unless the [civil] forfeiture sanction was intended as punishment, so that the proceeding is essentially criminal in character,

18

the Double Jeopardy Clause is not applicable.").  Prison disciplinary and classification

proceedings are not criminal prosecutions.  *See Wolff v. McDonnell*, 418 U.S 539, 556

(1974); *see also Hernandez-Fundora*, 58 F.3d at 806 (holding that even though sanction

may have punitive component, sanction is not necessarily punishment

for double jeopardy purposes).

Because a prisoner classification does not constitute a criminal proceeding,

Plaintiff's sex offender classification does not implicate the Fifth Amendment Double

Jeopardy Clause.

### E.    Official Capacity Claims

Plaintiff has asserted claims for declaratory and injunctive relief. Thus, the court

construes his complaint most broadly to assert these claims against Defendants in their

official capacities.

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court

recognized a limited exception to the Eleventh Amendment's grant of sovereign

immunity from suit to permit a plaintiff to sue a state official acting in an official capacity

for prospective injunctive relief for continuing violations of federal law.  *Id.* at 155–56;

*see also In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005).

"A plaintiff may sue a state official acting in his official capacity—notwithstanding the

Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law."

*In re  Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).  When a party sues a state

official in his or her official capacity, "a federal court's remedial power, consistent with

the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and

may not include a retroactive award which requires the payment of funds from the state

treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974); *Ex parte Young*, 209 U.S.

123, 155–56 (1908).  That is, a plaintiff may sue a state official acting in an official

capacity for prospective injunctive relief from continuing violations of federal law.  *See In

re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371–72 (2d Cir. 2005).  The *Ex

parte Young* exception to Eleventh Amendment immunity "does not permit judgments

against state officers declaring that they violated federal law in the past."  *Puerto Rico

Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Plaintiff requests the court to issue a declaratory judgment that Defendants have

violated his constitutional rights by his classifying him as a sexual offender.  Am. Compl.

At p. 13 (¶ A).  Even assuming that Plaintiff has alleged an ongoing Fourteenth

Amendment violation based on a continuing sexual offender classification, the exception

to Eleventh Amendment immunity "does not permit judgments against state officers

declaring that they violated federal law in the past."  *Puerto Rico Aqueduct* 506 U.S. at

146; *see also Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend

the reasoning of *Young* . . . to claims for retrospective relief.").

Plaintiff also requests injunctive orders for the court to order elimination of all

records referencing his status as a sexual offender or his involvement with sex offender

treatment; to eliminate future reliance on non-convicted charges, police reports and

PSIs; and require immediate review of how SOTNS based on non-conviction charges

are assessed with respect to inmate classification, mental health and community

release.  *Id.* at pp. 13-14 (¶ B).

Unlike an individual capacity claim for monetary damages under section 1983,

personal involvement in the alleged constitutional violation is not a prerequisite to official

capacity claims for injunctive relief.  *See Hamilton v. Deputy Warden*, 2016 WL 6068196, at *13 (S.D.N.Y. Oct. 13, 2016).  However, a claim for injunctive relief against a defendant in his or her official capacity may proceed only to the extent that the defendant has the authority to remedy the alleged ongoing constitutional violation.  *See Scozzari v. Santiago*, 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019).  Further, any prospective relief regarding prison conditions must be "narrowly drawn, extend[] no further than necessary to correct the violation of a federal right, and [be] the least intrusive means necessary to correct the violation."  *Brown v. Plata*, 563 U.S. 493, 530 (2011) (citing 18 U.S.C. § 3626(a)).

Even assuming that Plaintiff has stated a plausible ongoing due process violation based on his continued SOTNS/sex offender classification, his injunctive requests must be denied.  The court lacks authority to order expungement of prison records that are not court records.  *See Petaway v. Osden*, No. 3:17-CV-00004 (VAB), 2019 WL 1877073, at *8 (D. Conn. Apr. 26, 2019), *aff'd,* 827 F. App'x 150 (2d Cir. 2020) (denying request for records destruction by DOC); *Doe v. Manson*, 183 Conn. 183, 184 (1981) (recognizing that certain records are not court records and therefore, "the trial court erred in ordering their destruction.").  Moreover, a court order to change the Connecticut prisoner classification process and SOTNS assessment for all relevant inmates exceeds the scope of any possible procedural due process deprivations arising from Plaintiff's classification reviews.  *See Abernathy v. Comm'r of Corr.*, 2020 WL 5097566, at *3 (D. Conn. Aug. 28, 2020) ("[I]n the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the

management of state prisons."). Accordingly, the court will dismiss as not plausible Plaintiff's official capacity claims.

## IV.    CONCLUSION

For the foregoing reasons, the court permits Plaintiff to proceed on his Fourteenth Amendment procedural due process claims in connection with review of his sex offender classification/SOTNS against Director Maiga and Counselor Supervisor Tugie in their individual capacities. Accordingly, it is ORDERED AND ADJUDGED as follows:

1.  Defendants Quiros, Galligan, Moss and Dolittle and all other claims are dismissed from this action without prejudice. Within **thirty (30) days** from the date of this order, Plaintiff may file an amended complaint to correct the deficiencies identified in this ruling. He is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.

2.  The clerk shall verify the current work address for Director David Maiga and Counselor Supervisor Elizabeth Tugie with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint to them at their confirmed addresses within twenty-one (21) days of this Order, and report on the status of the waiver request on the thirty-fifth (35th) day after mailing.  If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that

defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

3. The clerk shall send a courtesy copy of the amended complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

4. The defendants shall file their response to the amended complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

5. Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within six months (180 days) from the date of this Order. Discovery requests need not be filed with the court.

6. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

7. All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

8. According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was

filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

9. If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

10. The plaintiff shall utilize the Prisoner Electronic Filing Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendant's counsel by regular mail.

**IT IS SO ORDERED** at Hartford, Connecticut, this 20th day of January, 2022.

/s/ Omar A. Williams
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE