**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CODY R. URBAN,<br>    *Plaintiff*,<br><br>        v.<br><br>ANGEL QUIROS, ET AL.<br>    *Defendants.* | No. 3:21-cv-00919 (OAW) |

**<u>INITIAL REVIEW ORDER</u>**

Plaintiff Cody R. Urban until recently was an inmate at Brooklyn Correctional Institution ("Brooklyn").  ECF Nos. 1, 47.  In an amended complaint ("First Amended Complaint"), Plaintiff asserted claims based on violations of his constitutional rights under the Fifth Amendment's Double Jeopardy Clause and the Fourteenth Amendment's Procedural Due Process Clause and Equal Protection Clause.  ECF No. 17.  On January 20, 2022, the court issued an initial review of Plaintiff's First Amended Complaint that permitted his claim of a Fourteenth Amendment procedural due process violation against Defendants Tugie and Maiga to proceed in this action.  ECF No. 35.

The court's initial review order dismissed the following claims:  a Fourteenth Amendment due process claim based on Plaintiff's classification as a sexual offender in 2016, as time barred; due process claims based on the DOC's periodic review of Plaintiff's sex offender classification against Defendants Quiros, Galligan, Dolittle, and Moss, as not plausible for lack of personal involvement; Fourteenth Amendment equal protection claims, as not plausible; a Fifth Amendment Double Jeopardy Clause claim, as not plausible; and official capacity claims, as not plausible.  *Id.*

On February 28, 2022, Plaintiff filed another amended complaint ("Second Amended Complaint") alleging Fourteenth Amendment and Eighth Amendment violations against Defendants Quiros, Maiga, Tugie, Galligan, Garcia, Moss, Dolittle, Clements, and Surfus.[1]  ECF No. 42.

The Second Amended Complaint includes many allegations that are identical to those asserted in the First Amended Complaint.  The court assumes familiarity with the allegations in the First Amended Complaint.

## I.      FACTUAL BACKGROUND[2]

As a result of an incident that occurred in October 2013, Plaintiff was charged with assault in the second degree, including the lesser offense of assault in the third degree; assault in the second degree by means of a dangerous instrument; burglary in the first degree; home invasion, including the lesser offense of burglary in the third degree; sexual assault in the first degree; threatening in the first degree, including the lesser included offense of threatening in the second degree; and carrying a pistol without a permit.  ECF No. 42 at ¶ 1.

Plaintiff was found not guilty of assault in the second degree, assault in the second degree by means of a dangerous instrument, home invasion, sexual assault in the first degree, threatening in the first degree, and carrying a pistol without a permit.  *Id.* at ¶ 3.  He was found guilty of assault in the third degree, burglary in the first degree

---

[1] Rule 10 of the Federal Rules of Civil Procedure states that "[t]he title of the complaint must name all the parties."  Fed. R. Civ. P. 10(a).  Plaintiff has not named any defendants in a case caption. However, a court may find a pro se complaint to sufficiently plead claims against defendants not named in the caption when there are adequate factual allegations to establish that the plaintiff intended them as defendants. *See Imperato v. Otsego County Sheriff's Depart.*, 2016 WL 1466545, at *26 (N.D.N.Y. April 14, 2016) (citation omitted).  Because Plaintiff has listed Defendants as parties and alleged specific facts about them in the body of the complaint, the Court considers the amended complaint to provide adequate indication that these individuals are named as defendants.

[2] All facts recounted herein are taken from Plaintiff's Second Amended Complaint.

and third degree, and threatening in the second degree.  *Id.* at ¶ 4.  The burglary in the third degree conviction was later vacated by the trial judge.  *Id.* at ¶ 5.

Plaintiff was sentenced on the first-degree burglary conviction to fifteen years of confinement, execution suspended after seven years in prison, with five years of probation; on the second-degree threatening conviction, one year of confinement, concurrent; and on the third-degree assault conviction, one year of confinement, concurrent.  *Id.* at ¶ 6.  Plaintiff is presently still serving his sentence.  *Id.*

On October 22, 2013, when he first entered DOC custody, Plaintiff received a classification assigning him a sexual offender treatment need score ("SOTNS") of 3 with a subcode of" U" (unverified).  *Id.* at ¶ 16.  At that time, Plaintiff was not aware that such classification had taken place or that he had been assigned an SOTNS.  *Id.*  On June 11, 2021, Plaintiff received an initial classification log showing this information.  *Id.*; s*ee also* ECF No. 42-1.

Plaintiff made bond on December 24, 2013, and remained at liberty until the jury rendered the verdict on February 8, 2016.  ECF No. 42 at ¶ 17.  On February 9, 2016, after he re-entered DOC custody, he was again assigned an SOTNS of S-3U.  *Id.; see also* ECF No. 42-1.  Plaintiff was not aware and received no notice of his initial classification and his SOTNS assignment.  ECF No. 42 at ¶ 19.   Plaintiff alleges that the S-3U scores must have been based on nonconviction information because he had not been convicted of a sexual offense.  *Id.* at ¶ 23.

In April 2016, Plaintiff arrived at MacDougall-Walker Correctional Institution ("MacDougall").  *Id.* at ¶ 24.  Defendant Moss handled Plaintiff's nonconviction SOTNS classification hearing.  *Id.* at ¶ 25.  Plaintiff informed Defendant Moss that he had been

found not guilty of sexual assault by the jury and suggested that Defendant Moss should review the trial transcripts. *Id* at ¶¶ 25-26.[3]   In June 2021, Plaintiff received the DOC re-classification form dated April 29, 2016, which shows that Defendants Moss and Maiga assigned him a score of S-3VN, and which is signed by Defendants Moss and Maiga. *Id.* at ¶ 30, ECF No. 42-1.

The DOC classification policy permits consideration of nonconviction information, including an original sexual offense charge substituted with a non-sexual offense charge or conviction, and information discovered in a pre-sentence investigation ("PSI") or police report that is part of a crime resulting in a conviction that was sexual in nature. ECF No. 42 at ¶ 28.   Plaintiff did not have any substituted charge relevant to the sexual assault charge for which he was found not guilty. *Id.* at ¶ 29.

At the conclusion of his hearing, Plaintiff was never given any DOC documents by Defendant Moss, nor was he shown or informed of what documents were relied upon in support of his assigned SOTNS and classification as a sexual offender. *Id.* at ¶ 31. On June 11, 2021, Plaintiff obtained the notification and hearing form used by Defendant Moss, which she told him he "had to sign." *Id.* at ¶ 32.   On the hearing form, Defendant Moss stated that Plaintiff had informed her that the victim had lied and there was not enough evidence to charge him with the sexual assault. *Id.* at ¶ 33.   She also stated: "There was not mention of this in the report attached." *Id.*   Plaintiff asserts he has no idea what report Defendant Moss referred to, or what documents she used or relied upon. *Id.* at ¶ 34.   It appeared to Plaintiff that Defendant Moss must have relied

---

[3] In his First Amended Complaint, Plaintiff alleged that on April 7, 2016, he was informed for the first time that the DOC had classified him as a sexual offender.  ECF No. 17 at ¶ 22.

upon the PSI or police report to assign his SOTNS.[4]  *Id.* at ¶ 35.  The notification and hearing forms do not specify what documents were relied upon to support Plaintiff's assigned SOTNS.  *Id.* at ¶ 36.  Nor does the hearing form provide a meaningful statement of the reasons for the classification decision or the repercussions associated with assigning Plaintiff an SOTNS of 2 or greater.  *Id.*  Defendant Moss would not permit Plaintiff to possess the documents and information in her possession, which hindered his ability to properly defend himself; Plaintiff was also not provided with an adequate amount of time to prepare his defense or obtain any documents in his defense.  *Id.*

Through inmate requests dated October 30, 2020, and March 1, 2021, Plaintiff learned that the charges, PSI, and police report were used in determining his SOTNS and sexual offender label.  *Id.* at ¶ 37.  The police report, however, contains false allegations, while the PSI contains hearsay.  *Id.* at ¶ 41.  Plaintiff has confirmed that his trial transcripts are not in his file.  *Id.*

As the hearing officer, Defendant Moss did not permit Plaintiff any opportunity to present live witness testimony from Plaintiff's lawyer for the classification hearing; he was not permitted to conduct cross-examination; and he was not provided with an advisor.  *Id.* at ¶ 44.

Defendant Moss conducted a meaningless classification hearing in order to base Plaintiff's SOTNS on nonconviction information due to Defendant Doolittle's "predisposed" decision to assign him with an SOTNS of 3 and label him as a sexual

---

[4] Plaintiff alleges that the PSI contains a description of a sexual assault based upon his ex-girlfriend's statement and that the police report contains her allegations.  ECF No. 42 at ¶ 176.

offender. *Id.* at ¶¶ 45-46.[5]  After the hearing, Plaintiff's SOTNS allegedly changed only as to the subcode "U" (unverified) to "VN" (verified, nonconviction). *Id.* at ¶ 45.

Defendants Maiga and Tugie oversaw and were aware of the violation that took place in connection with the assignment of Plaintiff's SOTNS.  *Id.* at ¶ 47.  Defendant Maiga was the final signature on the re-classification form dated April 29, 2016, which Plaintiff obtained on June 11, 2011, through his FOIA request.  *Id.* at ¶ 47.[6]

After initial classification, an inmate allegedly receives periodic reviews for his risk and needs scores. *Id.* at ¶ 49.  Regular reviews are allegedly initiated every six months or annually depending on the time remaining on the inmate's sentence.  *Id.* at ¶ 50.  Plaintiff allegedly has had several regular reviews that were completed without seeing him or informing him that a regular review had been initiated as required by the Department of Correction ("DOC") classification manual.  *Id.* at ¶ 52.

Plaintiff had a review of overall level reduction, which required that he be seen, be informed that a review had been initiated, and be notified if his reduction was approved or seen if it was denied.  *Id.* at ¶ 54.  However, Plaintiff was not seen or

---

[5] Plaintiff alleges that Defendant Moss conducted the hearing according to her bias against men.  ECF No. 42 at ¶ 157.  He alleges that she stated: "It doesn't matter if you went to trial and just because you went to trial doesn't mean you didn't do it" and "I hate how men lie, you[']re all the same[.]"  *Id.*

[6] In his First Amended Complaint, Plaintiff alleged that he contacted his appellate lawyers and asked them to contact Defendant Moss for information about the errors on the "rap sheet" and Plaintiff's sexual offender classification.  ECF No. 17 at ¶ 32.  A letter dated April 22, 2016, to Plaintiff from his appellate lawyer stated that Defendant Moss had explained that he was considered a sexual offender because he was charged with sexual assault and convicted of the lesser-included charge of assault for purposes of determining his "levels."  *Id.* at ¶ 34.  It stated further that "[t]his is so because of the relationship between the sexual assault charge and the lesser charge.  In addition, when assessing your status the department of corrections considers the pre-sentence investigation and police reports."  *Id.*  Defendant Moss sent Plaintiff's lawyer his mittimus and a paper stating that "the mitts were not the issue, it's the cases on the rap sheet that dropped down to cases on mitt."  *Id.* at ¶ 35. The letter falsely referred to Plaintiff being charged with a sexual assault and convicted of a lesser included charge of assault.  *Id.* at ¶ 36.  The "rap sheet" includes the false charge of aggravated sexual assault in the first degree, which was thrown out by the prosecution during Plaintiff's criminal trial.  *Id.*

informed about the initiation of the review, and he was not seen when his overall reduction was denied on September 7, 2019. *Id.* Plaintiff allegedly could not appeal this denial because he allegedly was not aware that his overall level reduction had been denied. *Id.* at ¶ 55. Plaintiff obtained through a FOIA request a re-classification log dated October 7, 2019, that stated, "Do not recommend level reduction due to nature of instant offense." *Id.* at ¶ 56. This was recommended by Defendants Clements and Surfus. *Id.* Plaintiff was denied an overall level reduction from 3 to a 2 because his SOTNS was 2 or greater. *Id.* at ¶ 57.

In December 2020, Plaintiff submitted new information consisting of his jury verdict transcripts showing that he was not guilty of sexual assault or a lesser included offense, which his counselor included in his DOC file. *Id.* at ¶¶ 58-59. Defendants never corrected the due process violation regarding his classification, although they had opportunity to review the relevant information during the periodic reviews. *Id.* at ¶ 60.

Defendants Quiros, Maiga, Tugie and Garcia did not adequately review all the concerns Plaintiff had expressed regarding his wrongful classification through letters, emails and grievances. *Id.* at ¶ 61. Defendants also failed to supervise his regular reviews to correct his wrongful sexual offender classification despite being aware of the risks associated with such classification. *Id.* at ¶ 62. Defendant Garcia has the authority to correct Plaintiff's classification and was well aware of the inadequate regular reviews and SOTNS hearing due to Plaintiff's letters and grievances. *Id.* at ¶ 63. Instead, she sent a letter defending the policy by stating that Plaintiff's SOTNS was "determined by current policy as defined in the 2012 objective classification manual and

AD 9.2 Offender Classification which takes into account any known history of problematic sexual behavior." *Id.* at ¶ 63.

After Plaintiff arrived at Brooklyn, he received an Offender Accountability Plan ("OAP") on August 13, 2013, which recommended that he participate in a domestic violence program, a sex offender program referral, an addiction services referral, and a job assignment. *Id.* at ¶ 66.

The OAP allegedly states that "failure to comply with OAP recommendations or conduct which results in discipline or increases in risk level" will have a negative impact on his Risk Reduction Earned Credit ("RREC") and his chances of participating in supervised community release and/or parole. *Id.* at ¶ 67.

On March 31, 2020, Plaintiff had a sex offender program evaluation by DOC mental health staff at Brooklyn due to his sex offender program referral on his OAP. *Id.* at ¶ 68. He informed mental health staff that he should not have to participate in the sex offender program because he was not found guilty of a sex offense. *Id.* at ¶ 69. Mental health staff responded by saying that in light of his PSI and SOTNS, they had to determine whether he needed to participate in a sex offender program; they indicated that he would be recommended for the short track sex offender program since he had denied the allegations of sexual assault. *Id.* at ¶ 70.

Plaintiff was told that he had to complete the short track sexual offender program or he would face consequences: a Class A disciplinary report, 25 days' loss of RREC and a negative impact on his chances of participating in a parole or community release program. *Id.* at ¶ 73. Upon completion of the sex offender treatment program, Plaintiff was provided with a synopsis stating that he had expressed difficulty accepting this

requirement to attend the sex offender program and had expressed that it was unfair due to his acquittal on the sex assault charges.  *Id.* at ¶ 74.

Plaintiff's sex offender label and SOTNS were disseminated through DOC, the Board of Pardons and Parole, and Probation; his participation in the sex offender treatment program has tarnished his reputation.  *Id.* at ¶¶ 76, 80, 81.  The score will remain if he is returned to DOC after being released.  *Id.* at ¶ 82.  His SOTNS restricts his eligiblity for minimum security prisons, earning five days of RREC a month, community-based Pell programs, certain job assignments, and community release; it also prevents him from obtaining an overall reduction level from a 3 to a 2.  *Id.* at ¶ 82-84.  By contrast, inmates who have an S-1 status are allegedly routinely approved for overall level reductions and certain job assignments, and they are permitted to participate in programs.  *Id.* at ¶ 64, 85.

Due to his SOTNS, Plaintiff was allegedly denied an overall level reduction on September 7, 2019; community release on January 4, 2021; and a maintenance job on January 7, 2021.  *Id.* at ¶ 86.

Plaintiff has been intentionally treated differently from female inmates who have been assigned a nonconviction SOTNS of 2 or greater and have still been approved for community release.  *Id.* at ¶¶ 95-96.  Male inmates with a nonconviction SOTNS of 2 or greater are always denied community release by Defendant Galligan.  *Id.* at ¶ 96. Plaintiff was informed by a correctional counselor that Defendants Maiga and Tugie have also overriden classifications of female inmates who should have been assigned an SOTNS of 2 but received SOTNS of 1.  *Id.* at ¶ 98.  Plaintiff informed Defendant Galligan about his wrongfully-assigned SOTNS, but Defendant Galligan's office staff

responded that Plaintiff should "write to offender classification" and told him that his package would be reviewed for community release once it was received. *Id.* at ¶ 114. Plaintiff was denied community release as Defendant Galligan failed to act or investigate Plaintiff's concerns, despite a DOC counselor emailing Defendant Galligan and advising him to review Plaintiff's package closely due to his classification. *Id.* at ¶¶ 114-115.

Inmate Dionne was convicted at trial of risk of injury to a minor and sexual assault in the fourth degree and classified as S-3. *Id.* at ¶ 126. Although he is not similarly situated to Plaintiff, he and Plaintiff have the same SOTNS. *Id.* at ¶ 127. Inmate Quinones was convicted of non-sexual offenses and was classified as an S-1 based on his convictions, lack of problematic sexual history, and no sexually-related disciplinary reports. *Id.* at ¶ 130. Plaintiff asserts that he is similarly situated to inmate Qinones, but they have been treated differently as a result of their SOTNS's. *Id.*

In December 2021, Defendant Quiros changed Plaintiff's SOTNS to "0/H," which indicated that he had a hearing pending after the Connecticut Supreme Court decision in *Anthony A. v. Comm'r of Correction*, 339 Conn. 290 (Conn. June 17, 2021).[7] *Id.* at ¶ 161. Defendant Clements denied Plaintiff's request dated January 18, 2022, for copies of any documents that the DOC intended to use at that hearing. *Id.* at ¶ 163. DOC provides inmates with advisors for disciplinary hearings, but Defendant Clements denied Plaintiff an advisor, allegedly to hinder Plaintiff's defense. *Id.* at ¶ 164.

---

[7] In *Anthony A.*, 339 Conn. at 313-320, 328, the Connecticut Supreme Court held that the DOC had violated both the Due Process Clause of the Fourteenth Amendment and Article First, section 9, of the Connecticut Constitution by failing to afford adequate process to an inmate who received an elevated score on the basis of nonconviction information.

On February 15, 2022, Defendants Surfus and Clements presented Plaintiff with a sex treatment notification hearing form, but Plainttiff refused to sign the form. *Id.* at ¶ 165. Plaintiff informed them that they should only rely on his trial transcripts, which show his innocence, and that information in the PSI or police reports was false. *Id.* at ¶ 166. Defendant Surfus stated that they were not going to use the trial transcripts. *Id.* Plaintiff requested copies of documents relevant to his hearing, but Defendant Clements stated that he could not have any copies or view anything. *Id.* at ¶ 166. Defendant Clements denied Plaintiff's request to have his attorney provide live testimony as his lawyer was not a witness to the incident, although he indicated that Plaintiff could obtain a statement from his lawyer. *Id.* at ¶ 168. He stated that the hearing date would not be postponed if Plaintiff were not able to get in contact with his lawyer prior to the hearing date. *Id.* Plaintiff's new SOTNS hearing was scheduled for February 18, 2022, but he was not able to contact his attorney prior to that date. *Id.* at ¶¶ 148, 160, 169.

Plaintiff's hearing was conducted according to allegedly unconstitutional "practices and behaviors" similar to his first hearing, resulting in Defendants Clements and Surfus intentionally classifying him with a SOTNS of S-3VN for a second time. *Id.*

Plaintiff has known Defendants Surfus and Clements for more than three years and has worked for them for more than one year. *Id.* at ¶¶ 170-171. He believes that they are biased against him based on his numerous previous attempts to rectify his misclassification. *Id.* He has heard them make comments about not permitting sex offenders to go to halfway houses. *Id.* at ¶ 170. Defendant Surfus told him that he would not go to a halfway house due to his SOTNS. *Id.* At a Domestic Violence Program, Defendant Clements questioned Plaintiff about the allegations in the police

report.  *Id.* at ¶ 172.  After Plaintiff indicated the allegations of sexual assault were false, Defendant Clements stated that he did not believe Plaintiff was being truthful.  *Id.* Defendant Clements noted that the PSI and police report did not indicate that he was acquitted of sexual assualt.  *Id.*

During the hearing, Plaintiff provided his own statement and the jury verdict transcripts, but Defendant Clements indicated that the transcripts did not matter.  *Id.* at ¶ 173.  Plaintiff was not asked if he had any witnesses or permitted to cross examine any witnesses.  *Id.* at ¶ 178.  He asserts that the PSI and police report do not constitute evidence to support the decision.  *Id.*  Further, the decision was not rendered by an impartial hearing officer without a meaningful statement of the reasons for the decision. *Id.* at ¶ 178.  Plaintiff also alleges that he should have been provided with an advisor. *Id.* at ¶ 164.  Defendants Maiga, Tugie and Garcia permitted Plaintiff's rights to be violated at his second SOTNS hearing.  *Id.* at ¶ 182.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory), *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint sua

sponte if, inter alia, the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," see Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57.  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.

3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.   DISCUSSION

Plaintiff's Second Amended Complaint alleges violations of his constitutional rights under the Fourteenth Amendment's Due Process and Equal Protection Clauses and the Eighth Amendment based on his allegedly wrongful classification as a sex offender with an SOTNS of 3.  The court will first consider whether Plaintiff has alleged any plausible claims for damages against any defendant in his or her individual capacity.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official."  *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

### A.   Fourteenth Amendment Due Process

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property.  U.S. Const. amend. XIV.  In determining whether an incarcerated individual has stated a procedural due process claim, a court "first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so [it asks] whether the procedures followed by the State were constitutionally sufficient."  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).  While procedural due process prohibits deprivations of life, liberty, or property without

constitutionally adequate procedures, substantive due process protects these substantive rights "no matter the process employed by the State." *Case v. Anderson*, No. 16-CV-983 (NSR), 2017 WL 3701863, at *14 (S.D.N.Y. Aug. 25, 2017).

The court construes Plaintiff's complaint as alleging deprivations of two distinct liberty interests without due process of law in violation of the Fourteenth Amendment: (1) a state-created liberty interest in not being classified as a sex offender; and (2) a liberty interest based on the stigmatizing effect of his classification as a sex offender. Liberty interests may arise from either the Due Process Clause itself or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005).

### 1.    State-Created Liberty Interest

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.* at 483-84.  A plaintiff has a protected liberty interest only if the state created such an interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship.  *See Tellier v. Fields,* 280 F.3d 69, 80-81 (2d Cir. 2000).

Here, Plaintiff alleges his sex offender status imposed the burdens of his ineligibility for minimum security prisons, earning RREC at a higher rate, education- and community-based programs, certain job assignments, a risk level reduction, and community release.  ECF No. 42 at ¶¶ 83, 84, 86, 87.  Plaintiff also complains that he was denied community release due to Defendant Galligan's failure to act on or

investigate Plaintiff's concerns about his assertedly wrongful SOTNS of S-3VN.  ECF No. 42 at ¶¶ 114-115.

Plaintiff has no state or federally created liberty interest in his classification such that he may invoke Fourteenth Amendment due process protections because the Connecticut legislature has given state prison officials complete discretion to determine prisoner classifications that have an impact on eligibility to participate in rehabilitative programs.  *Petipas v. Martin*, No. 3:17-CV-1912 (JAM), 2018 WL 5016997, at *5 (D. Conn. Oct. 15, 2018) ("[P]risoners generally have no protected interest in classifications that impact their eligibility to participate in rehabilitative programs. . . . Moreover, Connecticut has not granted inmates, by regulation or statute, a protected interest in their security classification; the matter is committed to the discretion of the Commissioner of Corrections.") (citing *Taylor v. Levesque*, 246 F. App'x. 772, 774 (2d Cir. 2007)); *see also Green v. Martin*, 224 F. Supp. 3d 154, 177 (D. Conn. 2016), *Vega v. Rell*, 2012 WL 1298678, at *2 (D. Conn. 2012) (stating that inmates have "no inherent liberty interest in receiving good time credit" and the Connecticut law that creates RREC does not create a liberty interest "because the commissioner is not required to make RREC available to all inmates; he has the discretion to make it available.").

Because Plaintiff cannot establish a protected state-created liberty interest in his risk-level classification, he cannot state a procedural or substantive due process deprivation based on the classification decision.  Likewise, Plaintiff cannot proceed on a constitutional claim against Defendant Galligan for denying him community release and failing to investigate his concerns because inmates do not have a constitutional right to community release.  *See Miller v. Lamont*, No. 3:20CV872(MPS), 2020 WL 6136300, at

*5 (D. Conn. Oct. 19, 2020) (dismissing inmate's procedural due process claim based on postponement of community release decision because the "plaintiff does not have a liberty interest in release to a community or residential placement"), *Luther v. Hunt,* No. 3:19-CV-744 (VAB), 2020 WL 127670, at *4 (D. Conn. Jan. 10, 2020), *reconsideration denied*, No. 3:19-CV-00744 (VAB), 2021 WL 311286 (D. Conn. Jan. 29, 2021) (stating that there are no procedural protections due to inmate in his application for community release because he has no liberty interest in release to a community or residential program), *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) (stating that there is no constitutional right to be released on parole or to other conditional release from prison, prior to expiration of valid sentence).

These claims therefore must be dismissed under 28 U.S.C. 1915A(b)(1) as not plausible.

### 2.    Stigma Plus Liberty Interest

Plaintiff alleges that his classification has wrongfully stigmatized him as a sex offender in violation of his due process rights.  ECF No. 42 at ¶¶ 75-85.  The United States Supreme Court and the Second Circuit have recognized a protected liberty interest in being free from a false stigmatizing statement that alters a person's legal status or rights in a tangible manner.  *See Vitek v. Jones*, 445 U.S. 480, 493 (1980) (finding a protectable liberty interest implicated by characterizing inmate as mentally ill and transferring him to mental hospital for mandatory behavior modification as a treatment for mental illness without due process), *Paul v. Davis*, 424 U.S. 693, 699-701 (1976) (finding that defamation by a state actor does not amount to a deprivation of "liberty" or "property" within the meaning of the Fourteenth Amendment, unless

accompanied by some interest other than mere loss of reputation), *Balentine v. Tremblay*, 554 F. App'x 58, 60 (2d Cir. 2014) (stating that a "stigma-plus claim" includes "a stigmatizing statement plus a deprivation of a tangible interest without due process of law") (internal quotation marks and citation omitted); *Vega v. Lantz*, 596 F.3d 77, 81-82 (2d Cir. 2010) (concluding that "it continues to be the case that wrongfully classifying an inmate as a sex offender may have a stigmatizing effect which implicates a constitutional liberty interest").

To prevail on a "stigma-plus" claim, a plaintiff must allege two distinct elements: "the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," which is the "stigma," and "a material state-imposed burden or state-imposed alteration of the plaintiff's rights or status," which is the "plus." *Vega*, 596 F.3d at 81 (internal quotation marks and citation omitted). The "plus" element must involve "specific and adverse action [by the state defendant] clearly restricting the plaintiff's liberty." *Velez v. Levy*, 401 F.3d 75, 87-88 (2d Cir. 2005) (citations omitted). "This state-imposed alteration of status or burden must be 'in addition to the stigmatizing statement.'" *Vega*, 596 F.3d at 81 (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). "However, 'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Sadallah*, 383 F.3d at 38 (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)).

If the plaintiff can demonstrate a liberty interest deprivation, he or she also must demonstrate that the liberty interest was deprived without due process of law. *Segal v.*

*City of New York*, 459 F.3d 207, 213 (2d Cir. 2006).  "Stated differently, the availability of adequate process defeats a stigma-plus claim."  *Id.*

For pleading purposes, Plaintiff has sufficiently alleged the first and second prong based on (1) his being labeled as sex offender, as he was not a convicted sex offender in 2016, and (2) his SOTNS, which allegedly was based on false nonconviction information, resulting in state-imposed burdens such as having to participate in sex offender treatment.  *See Holley v. Cook*, No. 3:20CV170 (MPS), 2020 WL 2494761, at *6 (D. Conn. May 14, 2020).  The court will assume that he has a stigma-plus liberty interest at this time.

a.  Stigma-Plus Claims Prior to July 6, 2018

The court previously dismissed Plaintiff's stigma-plus claim on statute of limitations grounds because it was clear from the face of the First Amended Complaint that as of April 2016, Plaintiff was aware that his sexual offender classification and SOTNS was based on the allegedly false charge of sexual assault.[8]  *See* ECF No. 35 at 13-14.

Plaintiff's Second Amended Complaint omits his prior allegations that his lawyer informed him that Defendant Moss's letter explained that he was considered a sexual offender because he was charged with sexual assault and convicted of the lesser-included charge of assault for purposes of determining his risk level, and the DOC's

---

[8] Although the statute of limitations is an affirmative defense, the court may dismiss a claim *sua sponte* where the allegations asserted in the complaint demonstrate that the relief sought is barred by the applicable statute of limitations.  *See Walters v. Industrial and Commercial Bank of China*, Ltd., 651 F.3d 280, 293 (2d Cir. 2011) (stating that a district court "may dismiss an action *sua sponte* on limitations grounds in certain circumstances where 'the facts supporting the statute of limitation defense are set forth in the papers plaintiff himself submitted.'") (quoting *Leonhard v. United States*, 633 F.2d 599, 600 n.11 (2d Cir. 1980)), *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a district court may dismiss a complaint on initial review based on a defense, such as the statute of limitations, that appears on the face of the complaint).

assessment of his status considers the pre-sentence investigation and police reports. ECF No. 17 at ¶ 34. Although the Second Amended Complaint does not allege that Plaintiff received this information, it is still clear from the face of the complaint that Plaintiff was aware after his hearing on February 9, 2016, that he had been classified with a SOTNS of 3 based on nonconviction information. Plaintiff alleges that he informed Defendant Moss that he had not been convicted of a sexual offense. *See* ECF No. 42 at ¶¶ 25-26, 45.[9] Thus, Plaintiff's stigma-plus claims accrued when he became aware that he had been misclassified by Defendants as a sexual offender after his hearing in 2016, which is substantially more than three years prior to his commencement of this action on July 6, 2021. Because §1983 claims are subject to the three-year statute of limitations period set forth in Connecticut General Statute § 52-577, Plaintiff's stigma-plus claims arising prior to July 6, 2018, are barred. *See Lounsbury v. Jeffries*, 25 F.3d 131, 132-34 (2d Cir. 1994).[10]

Further, Plaintiff cannot save his time-barred stigma-plus due process claims by asserting the continuing violation doctrine. *Harris v. City of New York*, 186 F.3d 243, 249 (2d Cir. 1999). Each procedural due process violation in connection with his misclassification represents a discrete unlawful act for which Plaintiff could have

---

[9] Moreover, even though the Second Amended Complaint is the operative pleading, the court may still credit admissions in the First Amended Complaint and attached exhibits. *Poindexter v. EMI Rec. Grp. Inc.*, No. 11 CIV. 559 LTS JLC, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (considering allegations made in the original complaint in consideration of a motion to dismiss).

[10] The date on which a § 1983 claim accrues is a "question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). In determining whether an action is barred by the statute of limitations, a federal cause of action accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citations omitted). Put another way, "accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (internal quotation marks and citation omitted).

brought a claim.  *See Smith v. Annucci*, No. 6:18-CV-06261 EAW, 2019 WL 539935, at
*5 (W.D.N.Y. Feb. 11, 2019) ("The procedural due process violations complained of by
[the p]laintiff in this case, while arguably part of a serial violation of his constitutional
rights, constitute discrete unlawful acts. [The p]laintiff could have brought a claim for
violation of his right to procedural due  process each time his administrative segregation
was continued."), *Hart v. Artus*, No. 6:16-CV-6808 CJS, 2021 WL 3022293, at *11
(W.D.N.Y. July 16, 2021) (noting that "the continuing violation doctrine does not apply to
[the p]laintiff's procedural due process claims, since the reviews of [the p]laintiffs'
Ad[ministrative] Seg[regation] placement are discrete acts.").

Plaintiff's due process claims based on his classification and SOTNS arising prior
to July 6, 2018, are time barred and must be dismissed.

b.   Stigma-Plus 2022 Classification Hearing

Plaintiff alleges that he was provided with an unconstitutional hearing for
reviewing his classification on February 18, 2022, after the Connecticut Supreme
Court's ruling in *Anthony A.*  ECF No. 42 at ¶ 169.

If a plaintiff can demonstrate a liberty interest, they also must demonstrate that
the liberty interest was deprived without adequate process if they are to establish a
procedural due process violation.  *Segal*, 459 F.3d at 213.  Thus, to prevail on his claim,
Plaintiff must establish that the procedures followed by the state were not
constitutionally sufficient.  *See Swarthout*, 562 U.S. 219, *Balentine*, 554 Fed Appx. at 61
("[T]he adequacy of the process by which Balentine was placed on the online registry is
an inquiry in the doctrinal analysis distinct from the existence of a 'stigma-plus' liberty or
property right.").

21

The level of procedural protection required depends on the purpose of the hearing. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). For a disciplinary hearing, an inmate is entitled to the protections set forth in *Wolff v. McDonnell,* 418 U.S. 539 (1974). *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (stating that inmates are entitled to "certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship"), *Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999) (per curiam) (concluding that discipline resulting in atypical confinement may not be imposed without the procedures enumerated in *Wolff*). "The *Wolff* Court, while holding that full adversary proceedings are not required for disciplinary deprivations of liberty in the prison setting, required written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence." *Benjamin v. Fraser*, 264 F.3d 175, 190 (2d Cir. 2001) (footnote omitted). Further, "due process requires that there be some evidence to support the findings made in the disciplinary hearing." *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992) (internal quotation marks omitted). The "some evidence" standard, however, "'is extremely tolerant'" and can be satisfied based on "*any* evidence in the record" supporting the disciplinary ruling. *Girard v. Chuttey*, 826 F. App'x 41, 46 (2d Cir. 2020) (quoting *Sira*, 380 F.3d at 69) (internal quotation marks omitted).

By contrast, for a hearing with an administrative purpose, an inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms,* 459 U.S. 460 (1983). In *Wilkinson v. Austin*, 545 U.S. 209, 214 (2005), the

Supreme Court determined that the process endorsed in *Hewitt* was sufficient before prisoners could be placed indefinitely for non-disciplinary reasons at a high-security "supermax" prison. The Court explained that the more "formal, adversary-type procedures" of *Wolff* are appropriate to protect liberty interests such as an individual's removal from "free society for a specific parole violation" or revocation of "good-time credits for specific, serious misbehavior[,]" while *Hewitt*'s informal, non-adversary procedures apply for proceedings where "the inquiry draws more on the experience of prison administrators," and the state interest implicates prison safety and security.  *Id.* at 228-229.

At present, it is not entirely clear which standard applies to classification hearings for an SOTNS based on nonconviction information.  This court has previously held that an inmate is entitled to the process due under *Hewitt* in connection with a hearing on his sexual treatment need score.  *Knight v. Semple*, No. 3:18-CV-703 (SRU), 2020 WL 1914927, *4-5 (D. Conn. April 20, 2020) (concluding that inmate should be afforded "informal, nonadversary procedures" under *Hewitt* for [sexual treatment need] score assignment).  *Knight*, however, conflicts with decisions from several other Circuits.  *See, e.g., Renchenski v. Williams*, 622 F.3d 315, 331 (3d Cir. 2010) (finding inmate designated as a sex offender and required to participate in sex therapy or suffer disciplinary custody and privilege loss was entitled to protections outlined in *Wolff*), *Gwinn* v. *Awmiller*, 354 F.3d 1211, 1218–19 (10th Cir. 2004) (finding that, because classification as sex offender reduced the rate at which an inmate could earn good time credits, inmate was entitled to procedural protections in *Wolff*), *Neal* v. *Shimoda*, 131 F.3d 818, 827-831 (9th Cir. 1997) (finding that, because classification of inmate as a

sex offender and mandatory successful completion of sex offender treatment program as precondition for parole eligibility implicate protected liberty interest, an inmate was entitled to procedural protections in *Wolff*).

Plaintiff alleges that he was deprived of an impartial hearing officer, an adequate opportunity to prepare for his defense, an advisor, an opportunity to present witnesses or to cross-examine any witnesses, a decision supported by some evidence, and a meaningful statement of the reasons for the decision.  ECF No. 42 at ¶¶ 164, 170-178. For initial pleading purposes, Plaintiff has sufficiently alleged a procedural due process violation arising from his February 2022 hearing.  The court will permit Plaintiff to proceed on these procedural due process claims against Defendants Clements, Surfus, Quiros, Maiga, Tugie, and Garcia, who were plausibly involved with his 2022 SOTNS hearing.

     c.  <u>Stigma-Plus Periodic Reviews</u>

Plaintiff's Second Amended Complaint also raises due process concerns in connection with his regular reviews and denials of his overall level reduction occurring after July 6, 2018.  *See* ECF No. 42 at ¶¶ 54-65.

In its prior initial review order, the court noted that due process requires that prison officials engage in periodic review of the administrative confinement, although it does not require that the inmate receive a hearing, be present, or provide statements for these periodic reviews.  ECF No. 35 at 14-15 (citing *Proctor v. LeClaire*, 846 F.3d 597, 609-12 (2d Cir. 2017)).  The court permitted this procedural due process claim to proceed against Defendants Maiga and Tugie for further development of whether Plaintiff has an actual liberty interest in his classification and if so, whether he was

denied any process due in connection with review of his SOTNS and sex offender classification. *Id.* at 15. Plaintiff's Second Amended Complaint suggests that Defendants Clements, Surfus, Quiros, and Garcia were also involved with review of his alleged misclassification. ECF No. 42 at ¶¶ 60-61. At this juncture, Plaintiff may proceed beyond initial review on his procedural due process claim in connection with periodic review of his SOTNS and sex offender classification against Defendants Clements, Surfus, Quiros, Maiga, Tugie, and Garcia, who were allegedly involved with his review.

### B.      Fourteenth Amendment Substantive Due Process Claim

"The doctrine of substantive due process protects the individual against certain government actions regardless of the fairness of the procedures used to implement them," *McClary v. O'Hare*, 786 F.2d 83, 88 (2d Cir. 1986) (internal quotation marks and citations omitted), but the scope of the doctrine "is very limited," *Doe v. U.S. Merchant Marine Acad.*, 307 F. Supp. 3d 121, 156 (E.D.N.Y. 2018). A successful substantive due process claim requires that the plaintiff show "that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (internal quotation marks and citations omitted). As the Second Circuit observed, a "stigma-plus" claim is considered "a species within the phylum of procedural due process claims." *Segal*, 459 F.3d at 213; *see also Leach v. City of Newburgh*, No. 17-CV-5363 (CS), 2018 WL 6411360, at *7 (S.D.N.Y. Dec. 6, 2018) ("Because what is alleged to be so shocking about [the d]efendants' conduct is the alleged deprivation of [the plaintiff's] property or liberty interest without procedural due process, his substantive due process

claim must fail."), *Piccoli v. Yonkers Bd. of Educ.*, No. 08-CV-8344, 2009 WL 4794130, at *6 & n.5 (S.D.N.Y. Dec. 11, 2009) (stating that a substantive due process claim may be inappropriate where it is duplicative of a "stigma-plus" procedural due process claim).

Plaintiff's allegations do not raise any inference of egregious or shocking behavior.  *See Miller v. Annucci*, No. 919CV0030LEKATB, 2019 WL 2370295, at *13 (N.D.N.Y. June 5, 2019) (concluding that the plaintiff's allegation that he was not properly evaluated prior to his admission to the Prison-Based Sex Offender Treatment Program or reclassified based on newly discovered evidence was not shocking to the conscience).  Because Plaintiff's stigma-plus claims are governed by procedural due process standards, the court dismisses his substantive due process claim as not plausible.

### C.  Fourteenth Amendment Equal Protection Claim

Plaintiff alleges that he has been treated differently than female inmates, who are given an SOTNS of 2 based on nonconviction information, and other male inmates who did not receive a SOTNS of 3.  ECF No. 42 at ¶¶ 95, 125, 130-134. He alleges that male inmates with a nonconviction SOTNS of 2 or greater are always denied community release by Defendant Galligan.  *Id.* at ¶ 96.

The Fourteenth Amendment Equal Protection Clause does not mandate identical treatment for each individual but "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To state an equal protection claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "impermissible

considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)) (internal quotation marks omitted). A plaintiff must demonstrate evidence of "purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). When the government classifies on the basis of sex or gender, courts have applied intermediate scrutiny that requires the government to show that the classification serves an important governmental objective. *See Barrett v. Maciol*, No. 920CV537MADDJS, 2022 WL 130878, at *4 (N.D.N.Y. Jan. 14, 2022) ("[P]rison administrators will have to demonstrate that their gender-based policies (1) serve important governmental objectives and (2) are substantially related to achieving those objectives."), *Clark v. Jeter*, 486 U.S. 456, 461 (1988), *Dale v. Barr*, 967 F.3d 133, 139 (2d Cir. 2020).

Here, Plaintiff's allegations suggest that DOC has intentionally discriminated on the basis of gender in assigning the SOTNS to inmates based on nonconviction information without an important governmental purpose. Accordingly, the court will permit Plaintiff to proceed on his gender-based equal protection claim against Defendants Clements, Surfus, Quiros, Maiga, Tugie, and Garcia, who were plausibly involved with his classification review after July 6, 2016.

Further, even when a suspect classification is not at issue, the Equal Protection Clause still requires that individuals be treated the same as "similarly situated individuals." *Fortress Bible Church v. Feiner,* 694 F.3d 208, 222 (2d Cir. 2012). Thus, a

plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  In the Second Circuit, class-of-one plaintiffs "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).  The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose— whether personal or otherwise—is all but certain*." See Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

Plaintiff alleges facts about one comparator: an individual inmate who was not convicted of a sexual offences and was given a SOTNS of 3.  *See* ECF No. 42 at ¶ 131-133.  Thus, for initial pleading purposes, the court will also permit Plaintiff's equal protection claim to proceed under a class of one theory against Defendants Clements, Surfus, Quiros, Maiga, Tugie, and Garcia.[11]

### D.    Eighth Amendment

Plaintiff alleges a violation of his due process rights based on Defendants' conscious disregard of the "great risk of serious harm" to him resulting from his sex offender classification.  ECF No. 42 at ¶¶ 135, 140.  Plaintiff alleges a claim of cruel and unusual punishment based on his classification and SOTNS.  *Id.* at pp. 57-59.

---

[11] Defendant Galligan is not plausibly alleged to have direct involvement in an equal protection claim based on inmate classification or SOTNS assignments.

The court clarifies that, as a sentenced inmate, Plaintiff's claims that DOC officials acted with conscious disregard of a substantial risk of serious harm are considered under Eighth rather than Fourteenth Amendment standards.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (deliberate indifference claims of sentenced inmates are considered under the Eighth Amendment while claims of pretrial detainees are considered under the Fourteenth Amendment).

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody[.]"  *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted).  Prison conditions that "involve the wanton and unnecessary infliction of pain" constitute cruel and unusual punishment under the Eighth Amendment, which applies to the states through the Fourteenth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 344-46 (1981).  Conditions of confinement that are merely "restrictive or even harsh," however, do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society."  *Id.* at 347.

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate is required to demonstrate an objective and a subjective element.  To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a deprivation of a life necessity or a "human need[ ]," *Rhodes*, 452 U.S. at 347, or that posed "a substantial risk of serious harm" to his health or safety, *Farmer*, 511 U.S. at 834.  The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety,

sanitary living conditions, and exercise.  *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991),

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989), *Rhodes,*

452 U.S. at 348.

To meet the subjective element, an inmate must allege that the defendants

possessed culpable intent; that is, the defendants knew that he faced a substantial risk

to his health or safety and disregarded that risk by failing to take corrective action.

*See Farmer*, 511 U.S. at 834, 837.  Thus, the defendants "must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists,

and [they] must also draw the inference."  *Id.* at 837.  An allegation of "mere negligen[t]"

conduct is insufficient.  *Id.* at 835.  Rather, the subjective element requires that the

inmate allege that the defendants acted with the mental state equivalent to

"subjective recklessness" as that term is used in "criminal law."  *Id.* at 840-41.

Plaintiff alleges that a sex offender is exposed to a greater risk of assault and

other dangers while incarcerated and that his SOTNS has required him to participate in

a sex offender treatment program and deprived him of opportunities for housing in a

lower security prison, opportunities to participate in various programs, community

release, RREC earning ability, and a maintenance job assignment.  ECF No. 42 at ¶

140-141, 151-153, pp. 57-59.  However, Plaintiff's allegation that he is exposed to a risk

of harm as a result of his classification is conclusory.  Plaintiff has not alleged facts

reflecting that his safety is at risk or that he has been deprived of any basic human

need.  *See Holley v. Cook*, No. 3:20CV170 (MPS), 2020 WL 6532842, at *3 (D. Conn.

Nov. 5, 2020) (finding that an allegation of general fear of being subjected to harm was

insufficient to state Eighth Amendment claim), *Bohn v. Cook*, No. 3:19CV1144 (MPS),

2019 WL 5298152, at *5 (D. Conn. Oct. 18, 2019) (dismissing Eighth Amendment claim because the plaintiff's allegations that being labeled or stigmatized as a sex offender caused him to be in danger of physical harassment and rendered him ineligible for various programs and placement in minimum security prison failed to describe a deprivation of a basic human need).

### E.    Punishment Without Clear Warrant of Law[12]

Plaintiff asserts that Defendants subjected him to "punishment without clear warrant of law" in violation of his rights under Article First, § 9 of the Connecticut Constitution.  *See* ECF No. 42 at pp. 61-62.  Section 9 provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

In *Binette v. Sabo,* 244 Conn. 23, 710 A.2d 688 (1998), the Connecticut Supreme Court authorized a damages action for violations of Article First, §§ 7 and 9 of the Connecticut Constitution, which deal with illegal searches and seizures.  *See Binette,* 244 Conn. at 47.  The Connecticut Supreme Court "emphasize[d] that [their] decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of [the] state constitution . . . .  Whether to recognize a cause of action for alleged violations of other state constitutional provisions in the future must be determined on a case-by-case basis."  *Id.* at 47–48.

More recently, the Connecticut Supreme Court's decision in *Anthony A.* did not recognize a cause of action for damages under § 9 for assignment of a SOTNS without adequate process.  In *Anthony A,* the Connecticut Supreme Court considered only the

---

[12] Although in reviewing the First Amended Complaint, the court refrained from addressing Plaintiff's state law claims, the court now finds it in the interest of judicial economy to review the state law claims stated in the Second Amended Complaint.

section's procedural protections for an inmate sex offender classification in the context of a habeas petition.  339 Conn. at 327-328.  At present, research reveals no cases in which a Connecticut court has recognized a private right of action for money damages under Article First, § 9 of the Connecticut Constitution for a claim that DOC employees improperly classified an inmate as a sex offender, denied him privileges, or subjected him to cruel and unusual punishment.  *See Torres v. Armstrong*, No. CV990427057S, 2001 WL 1178581, at *1, 6-7 & n.6 (Conn. Super. Ct. Sept. 6, 2001) (construing *Binette* narrowly in a civil action asserting claims of violations by DOC employees of an inmate's rights and declining to recognize a damages action under Article First, § 9 of the Connecticut Constitution).

The court declines to exercise supplemental jurisdiction over the claim seeking monetary damages for a violation of Article First, § 9 of the Connecticut Constitution against Defendants because the decision to recognize a new state constitutional tort should be made by the Connecticut courts.  *See* 28 U.S.C. § 1367(c)(1); *see also Holley v. Cook*, No. 3:20CV170 (MPS), 2021 WL 5302107, at *12 (D. Conn. Nov. 15, 2021) (declining to reinstate Article First, § 9 claim after *Anthony A.* because the Connecticut Supreme Court had still not recognized a private right of action for damages under Article First, § 9 in the context of an inmate sex offender classification), *M.A. v. City of Torrington,* No. 3:10CV1890 (JBA), 2012 WL 3985166, at *4 (D. Conn. Sept. 10, 2012) ("[T]he [c]ourt declines to exercise supplemental jurisdiction over [the p]laintiffs' constitutional claims, leaving any such recognition of new state constitutional torts to Connecticut courts, based on the case-by-case approach of *Binette* and on considerations of federal-state comity."), *Lopez v. Smiley,* 375 F. Supp. 2d 19, 26 (D.

Conn. 2005) ("In light of the Connecticut Supreme Court's explicit statement

in *Binette* that the Supreme Court did not intend to create a cause of action for money

damages for every alleged violation of the Connecticut state constitution, ... and the fact

that federalism and comity concerns strongly suggest that recognition of new state

constitutional torts should be determined on a case-by-case basis by *Connecticut

courts* in the first instance, this [c]ourt will refrain from exercising supplemental

jurisdiction over ... [the plaintiff's] Connecticut constitutional claims" asserted under

Article First, §§ 4, 5, 7, 8, 9, 10, and 14 against DOC employees.) (emphasis in

original).

###### F.    Intentional Infliction of Emotional Distress

Plaintiff alleges that Defendants are liable under state law for intentional infliction

of emotional distress because they classified him as a sex offender although they

allegedly knew he was not.  ECF No. 42 at pp. 62-64.

To state a claim for intentional infliction of emotional distress under Connecticut

law, a plaintiff must establish four elements: "(1) that the actor intended to inflict

emotional distress or that he knew or should have known that emotional distress was

the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3)

that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the

emotional distress sustained by the plaintiff was severe."  *Appleton v. Bd. of Educ. of

Town of Stonington,* 254 Conn. 205, 210, 757 A.2d 1059, 1062 (2000) (internal

quotation marks and citation omitted).  To be held liable for intentional infliction of

emotional distress, one's conduct must be "so outrageous in character, and so extreme

in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community."  *Id.* at 210–11 (internal quotation marks and citation omitted).

Plaintiff has not alleged facts in support of his claim that Defendants intended to inflict emotional distress upon him.  Defendants' alleged conduct is not plausibly "extreme and outrageous," as those terms are interpreted at common law.  The standard in Connecticut to demonstrate extreme and outrageous conduct is "stringent."  *Huff v. W. Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998).  "[E]xtreme and outrageous" conduct is defined as that which "exceed[s] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."  *DeLaurentis v. New Haven*, 220 Conn. 225, 267, 597 A.2d 807, 828 (1991).

Accordingly, Plaintiff has not stated a plausible claim of intentional infliction of emotional distress against any defendant.  This claim must be dismissed as not plausible.

### G.    Official Capacity Claims

Plaintiff has also asserted claims for declaratory and injunctive relief.  *See* ECF No. 42 at p. 64.

To the extent Plaintiff seeks damages against defendants in their official capacities, such claims must be dismissed.  *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (explaining that claims for money damages against state employees in federal court are barred by the Eleventh Amendment).

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign

immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief from continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007). When a party sues a state official in his or her official capacity, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974); *see also Ex parte Young*, 209 U.S. at 155–56. That is, a plaintiff may sue a state official acting in an official capacity for prospective injunctive relief from continuing violations of federal law. See *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371–72 (2d Cir. 2005).

Plaintiff requests the court to issue a declaratory judgment on the asserted ground that it appears "Plaintiff's entitled." ECF No. 42 at p. 64 (¶ A). The court construes this unspecified request as seeking a declaration that Plaintiff's rights were violated by misclassifying him as a sex offender and assigning him a SOTNS of 3 (the basis of Plaintiff's Second Amended Complaint). However, the exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past." *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993), *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief."). Moreover, if Plaintiff were to prevail on any constitutional claim proceeding in this action,

a judgment in his favor would serve the same purpose as a declaration that Defendants violated his constitutional rights.  A "dismissal of a declaratory judgment action is warranted where the declaratory relief plaintiff seeks is duplicative of his other causes of action."  *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016).

Plaintiff also requests injunctive orders without specifying any relief.  ECF No. 42 at 64, ¶ B.  At this juncture, the court assumes that Plaintiff has an ongoing Fourteenth Amendment equal protection and due process violation at issue and will permit the complaint to be served on Defendants in their official capacities.  However, the court reminds Plaintiff that prisoner requests for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons. *See Abernathy v. Comm'r of Corr.*, 2020 WL 5097566, at *3 (D. Conn. Aug. 28, 2020).

## IV.  CONCLUSION

For the foregoing reasons, it is thereupon **ORDERED AND ADJUDGED** as follows:

(1) Plaintiff may proceed on his Fourteenth Amendment procedural due process claims in connection with his February 2022 classification hearing and review of his sex offender classification and SOTNS against Defendants Clements, Surfus, Quiros, Maiga, Tugie, and Garcia in their official and individual capacities; and on his Fourteenth Amendment equal protection gender-based and a class-of-one claims against Defendants Clements, Surfus, Quiros, Maiga, Tugie, and Garcia in their official and individual capacities.

   a.   Defendants Galligan, Moss, and Doolittle and all other claims, including
        Plaintiff's state law claims and request for declaratory judgment, are
        DISMISSED from this action.

   b.   The Clerk of Court is respectfully instructed to include Defendants
        Galligan, Moss, Doolittle, Garcia, Clements and Surfus as defendants on
        the docket.

(2) The Clerk shall verify the current work address for Defendants Clements, Surfus,
    Quiros, and Garcia with the DOC Office of Legal Affairs, mail a waiver of service
    of process request packet containing the amended complaint to them at their
    confirmed addresses within twenty-one (21) days of this order, and report on the
    status of the waiver request on the thirty-fifth (35th) day after mailing.[13] If a
    defendant fails to return the waiver request, the Clerk shall make arrangements
    for in-person individual capacity service by the U.S. Marshals Service on that
    defendant, and that defendant shall be required to pay the costs of such service
    in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk shall prepare a summons form and send an official capacity service
    packet to the U.S. Marshal Service.  The U.S. Marshal Service is directed to
    effect service of the Second Amended Complaint (ECF No. 42) and this order on
    Defendants Clements, Surfus, Quiros, Maiga, Tugie, and Garcia in their
    official capacities at the Office of the Attorney General, 165 Capitol Avenue,
    Hartford, CT 06106, within twenty-one (21) days from the date of this order and
    to file a return of service within thirty (30) days from the date of this order.

---

[13] Defendants Maiga and Tugie have already been served in their individual capacities.

(4) The clerk shall send a courtesy copy of the Second Amended Complaint (ECF No. 42) and this order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) Defendants shall file their response to the Second Amended Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court. The order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10)      If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. Failure

to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  He should also notify Defendants or defense counsel of his new address.

**SO ORDERED** at Hartford, Connecticut, this 6th day of July, 2022.


_____/s/_____

OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE